*723 OPINION OF THE COURT
Richard F. Kuhnen, J.
Petitioner seeks by this article 78 proceeding to review the action of the Broome County Legislature on December 9, 1980, awarding to respondent Innerst Medical Supply, Inc., a contract for supplying unit dosage medication services to two extended care nursing facilities, commencing January 1, 1981. The contract was held by petitioner to that date. A temporary stay restraining respondents from taking any further action in furtherance of the award of the contract pending the determination of the court has been denied.
Prior to October 24, 1980, the Broome County purchasing director advertised for competitive bids on the new contract, on specifications prepared by the nursing homes’ administrator. The specifications called for “Drustar 24 hour medication exchange system or Drustar 7 day exchange system, or equivalents providing they meet the needs of the facility”. The specifications also reserved the right “as the interest of the County may required [sic] to reject any and all bids and to waive any informality in bids received”.
Thereafter, on October 24, 1980, the bids were opened at the scheduled time and it was determined that respondent Innerst, doing business as Gordon’s Drugs’ bid was the lowest of the four submitted, with petitioner GoldwinKent, Inc., second.
Subsequently, petitioner raised objections with the purchasing director that the bid submitted by Gordon’s Drugs did not meet the specifications, but these objections were rejected after consideration. However, the county officials were evidently disturbed at the possibility of legal action and consulted the County Law Department which became aware, it is claimed, for the first time, that the contract had been submitted on competitive bids although, if a contract for professional services, it was not necessarily subject to competitive bidding. The Law Department thereafter determined that it was a contract for professional services and that the bids submitted should be considered on that basis. By letter dated November 19, *724 1980, to all four bidders, the Law Department so informed them and invited also alternate proposals for consideration by the legislature at its meeting scheduled for November 20. The letter was hand delivered to the attorneys for Goldwin-Kent, Inc., at 11:10 a.m. on November 20, prior to the meeting of the legislature which was scheduled to take place at 2:00 p.m. on that day. A letter of protest was immediately delivered to the Law Department objecting to the procedure, insisting that petitioner should be considered the low bidder, that the county “does not have the right to reject all bids and then to accept the ‘proposal’ of Gordon as an exempt professional services contract”, and threatening legal action if the county awards the contract to Gordon’s Drugs.
What occurred thereafter is not entirely clear and is in some dispute. There was evidently some confusion on the part of the public health committee of the county, some vacillation, and some lack of communication between the various departments of the county involved. A proposed resolution of the health committee awarding the contract to Gordon’s Drugs, on November. 20, was considered by the legislature on that date, but held over. It was again considered by the health committee on December 8 and petitioner’s attorneys appeared before the committee on that date and submitted four new and separate proposals for unit dosage supply. The committee, after hearing the proposals, decided not to consider them and to consider only the proposals submitted on the original bids. Again, by letter on the following day, petitioner objected and threatened suit.
On December 9, 1980, the Broome County Legislature, by a vote of 17-2, adopted the resolution awarding the contract to Gordon’s Drugs and the contract was executed on December 18, 1980.
The position of petitioner on this proceeding, which was immediately instituted after the events recited, is that: (1) whether or not the contract involved professional services, the county is bound to follow the competitive bidding procedure of section 103 of the General Municipal Law once it has solicited, received and opened competitive bids; (2) a question of fact is presented as to whether the *725 bid of Gordon’s Drugs did not comply with the specifications and should therefore be rejected; and (3) a question of fact is presented as to whether the county acted in good faith and for the public interest.
The relief sought by petitioner is that the award of the contract to Gordon’s Drugs should be set aside and the contract awarded to petitioner, or in the alternative, that the contract and all bids should be vacated and new bids solicited. In the meantime, as pointed out, petitioner requested a stay until determination of the proceeding and this has been denied in view of the importance that there be no interruption in services to the two nursing facilities.
The county takes the position that the .action of the county legislature is not reviewable by way of an article 78 proceeding, that the contract involved was one for professional services and therefore exempt from the requirements of competitive bidding, and that if not, the contract had to be awarded to Gordon’s Drugs as the lowest bidder.
We will examine each of these contentions in turn.
THE FORM OF THE ACTION
This proceeding is essentially one to review the action of the Broome County Legislature in awarding the contract to Gordon’s Drugs on December 9, 1980, by Resolution No. 405. Although an article 78 proceeding may not be utilized to review a legislative act (Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400), however, as pointed out in the decision cited, the form of the action or proceeding is not controlling as long as a remedy is available. (See CPLR 103.)
The county concedes this but argues that the court must nevertheless have jurisdiction of the necessary parties, in this case the members of the Broome County Legislature, and that they have not been made parties as such (Matter of National Merritt v Weist, 50 AD2d 817, affd 41 NY2d 438). The county itself, however, has been made a party respondent and, in the court’s opinion, was the proper party as the contract involved was made, not with the legislature, but with the county on authorization of its agent, the legislature. (See County Law, § 51.)
*726 WHETHER THE CONTRACT INVOLVES PROFESSIONAL SERVICES
The competitive bidding requirements of statutes such as subdivision 1 of section 408-a of the County Law, and section 103 of the General Municipal Law, have been held inapplicable to contracts requiring special skills or training (People ex rel. Smith v Flagg, 17 NY 584). In that case the court pointed out that (p 587) “[i]t would be an unreasonable and mischievous construction of the statute [the competitive bidding statute involved] to apply it to services which require in their proper performance scientific knowledge or professional skill”. The list of services since recognized by the court as being within the exception include insurance contracts (Matter of Surdell v City of Oswego, 91 Misc 2d 1041; Matter of Lynd v Heffernan, 286 App Div 597, opp withdrawn 1 NY2d 919), stadium management (Hurd v Erie County, 34 AD2d 289), ambulance services (34 Opns St Comp, 1978, p 76), publicity services (24 Opns St Comp, 1968, p 437), investment management services (17 Opns St Comp, 1961, p 279), laboratory examinations (16 Opns St Comp, 1960, p 361), water surveys (15 Opns St Comp, 1959, p 373) and certified public accounting services (9 Opns St Comp, 1953, p 403).
The services involved in the contract here under consideration were clearly services requiring special skills and training by a professional licensed pharmacist. The specifications state that “the pharmacy will maintain a patient profile on each patient to monitor for therapeutic incapatibilities and drug allergies”. This surely is not work for a layman.
Although we have found no judicial decision construing pharmacy services specifically as exempt from competitive bidding our attention has been called to a 1978 opinion of the State Comptroller (vol 34, p 86), which is squarely in point and which states: “It is our opinion that a pharmacy service agreement between a county nursing home and a hospital, whereby the latter’s pharmacist will service all prescriptions for the nursing home, is a contract for services requiring the application of special skills and professional training and, thus, is not subject to competitive bidding.”
*727 Petitioner has offered no argument in support of its apparent claim that the contract is not one involving professional skill and knowledge, but it takes the position that this is a question of fact requiring a hearing and precludes dismissal of the petition.
We do not find that any such question of fact is presented. In our opinion the contract clearly calls for the exercise of professional knowledge and skill and a finding to the contrary would have to be set aside.
Petitioner, however, argues that even if so, the county acted arbitrarily and capriciously in ignoring the competitive bidding once it had adopted it and that this too presents a question of fact which requires a hearing.
MAY THE COUNTY DISREGARD THE COMPETITIVE BIDS?
The county purchasing director who made the decision to let the contract by competitive bidding states in his affidavit that he was unaware of the fact that by law this was a contract for professional services and that the Broome County Legislature had the exclusive power to make the award. The director states that he was acting in accordance with his routine practice as mandated by section 307(a) of the Broome County Charter which delegates to him the duty to “In accordance with requirements for advertising and competitive bidding, make all purchases and sales of materials, supplies and equipment, and contracts for the rental or servicing of equipment for the County.”
It was only after the bids were opened and the low bid challenged by petitioner as not meeting the specifications that the exempt status of the contract was pointed out by the county attorney. The controversy which subsequently ensued was attempted to be resolved by the county by scrapping all of the bids and letting the contract on an exempt basis, although to the same low bidder.
Is there anything in this picture which should estop the county from so doing?
There is an indication in the decision in Matter of Surdell v City of Oswego (91 Misc 2d 1041,1044, supra) that a pattern of competitive bidding may preclude letting a *728 particular contract on an exempt basis, although no such pattern was found to exist in that case where the court said: “If an ‘exempt’ professional services contract is nonetheless put up for bids, and the bidding procedure is overturned, is the city then obligated to readvertise and solicit new bids? I think not. Absent a showing of a pattern of conduct sufficient to allow a reasonable reliance on past custom or procedure in awarding service contracts, a municipality should not be locked into a certain business practice by unsuccessful bidders, particularly when such practice has been held to have no application to such contracts. In this case, there is insufficient evidence to establish a pattern of conduct on the part of the city in awarding insurance contracts on a strictly competitive basis. Therefore, it must be concluded that the municipality may write its coverage with any responsible agency of its choosing. (17 Opns St Comp 126; Matter of Lynd v Heffernan, supra.)”
Although we are not fully in accord with the dictum in that case that a pattern of competitive bidding may work an estoppel, at least unless there is a showing not only of reliance but also of prejudice, there is no showing here of any such pattern.
The proof submitted shows in fact that although the county legislature on November 18, 1975, by Permanent Resolution No. 357, effective December 4, 1975, adopted competitive bidding procedure for “professional services to furnish unit dosage medication at the Willow Point Nursing Home and Health Related Facility and the Chenango Bridge Nursing Home”, it abandoned that procedure soon thereafter. By Permanent Resolution No. 115, on March 2, 1976, reciting an unsatisfactory experience with such competitive bidding, it resolved that, effective April 1, 1976, it would revert back to its previous practice of letting such contracts as professional contracts. Thus its competitive bidding was authorized only for the period from December 4, 1975 to April 1, 1976, a period of only four months, hardly sufficient to establish a pattern. The county purchasing director was thus, because of Resolution No. 115, without authority to let the contract on the *729 basis of competitive bids and, in the court’s opinion, the county was acting properly in disregarding them.
Nor are we in agreement with petitioner’s counsel that “the Legislature ratified and confirmed the actions of the Purchasing Director and Nursing Home Administrator by receiving and opening the competitive bids”. The bids were to be submitted to and opened by the office of the Broome County Director of Purchasing, not to the legislature, and the legislature never took any action on them such as took place in the case cited, Albany City Nat. Bank v City of Albany (92 NY 363).
A case which is directly in point was decided by the Special Term, Madison County, on November 24, 1980, Matter of Mathalia Motors, v City of Oneida (105 Mise 2d 843). In that case the City of Oneida advertised for bids for towing services and sent forms and response sheets to bidders, but then disregarded the bids and awarded the contract on the basis that it required special skills and training and was not subject to competitive bidding. Justice Zeller, agreeing, stated (p 844): “Since the contract here was not controlled by section 103 of the General Municipal Law, the City did not have to award the contract to the lowest bidder, and was bound only to make an award that was in the best interest of the taxpayers. The City’s award may be set aside only upon a showing of fraud, collusion, illegality, or arbitrariness. Mathalia has failed to show such wrongdoing.”
The court is of the opinion that even if it were to adopt petitioner’s view that for one reason or another, the county is bound in this instance by the competitive procedure used, petitioner would be in no better position unless, in addition, the low bid of respondent Gordon’s Drugs must be set aside for failure to conform to the specifications. Whether it did so conform, maintains petitioner’s counsel, is a question of fact which requires a hearing.
The issue here centers around whether the system of medication offered by Gordon’s Drugs is equivalent to the so-called “Drustar medication exchange system”. The only difference between the two systems is in the method of packaging and labeling of the medications involved. The specifications mentioned the Drustar system by name but *730 added the phrase “or equivalents providing they meet the needs of the facility”. The specifications stated that “[t]hé individual solid unit doses must be hermetically sealed and properly labeled allowing for redispensing according to federal and state regulations”.
The director of purchasing states in an affidavit that after receiving a complaint by phone from Saul Davidson of petitioner that the system proposed by Gordon’s Drugs was not equivalent, he spoke with the county nursing home administrator who advised him that the proposed system did meet specifications. The nursing home administrator, in his affidavit, confirms this and states that the alternate system proposed by Gordon’s “exceeds all applicable minimum State and Federal regulations”, which is not denied. He states also that the concept of using strip packaging (as in Gordon’s proposal) had the prior approval of the county consulting pharmacist.
The president of respondent Gordon’s Drugs states in his affidavit that after a meeting held with petitioner’s counsel, Saul Davidson, and the county director of purchasing, on November 18, 1980, to discuss petitioner’s complaint that strip packaging is inferior: “To the contrary, subsequent to that meeting, I spoke with representatives of Drustar, specifically, Ms. Ginny Roberts, Executive Sales Coordinator for Drustar, Inc. and Ivan Pusecker, Vice President of Drustar, Inc., both of whom informed me that they do not consider the strip packaging method to be inferior; that they are both classified as ‘B’ packaging of essentially equal rating as rated by the United States Packaging rating system; that insofar as the integrity of the packaging is concerned (the standard which determines compliance or noncompliance with applicable State and Federal regulations), the two systems are equivalent; that the question as to a choice between the two packaging systems focuses primarily on the personal preference of the nurses in using such systems. Indeed, the Drustar system is made in such a fashion so sLs to allow it to be used in conjunction with the strip packaging as I have proposed to do with Broorhe County.”
The court is convinced that no question of fact is presented which requires a hearing or that a hearing *731 would be of any assistance in making a determination as to the “equivalency” of the two systems or whether “they meet the needs of the facility”. Those best qualified to determine whether they are equivalent and whether they meet the needs have submitted their opinions thereon and the court is not inclined to substitute its own judgment and should not. Unless clearly arbitrary or capricious, administrative decisions should be left free of judicial interference (Matter of Graziani v Rohan, 10 AD2d 154, affd 8 NY2d 967; Matter of Fiore v O'Connell, 272 App Div 927, affd 297 NY 260).
THE CHARGE OF BAD FAITH
We come finally to petitioner’s charge that the award here was made in bad faith.
The charge is based first on the claim that by accepting “an inferior and less expensive system”, without informing all bidders that such a system would be acceptable, “the County did not treat all competitors equally”. This charge has already been dealt with.
The second charge of bad faith is in connection with the letter of November 20 from the assistant county attorney stating that the bids received would be treated as “proposals” and inviting additional proposals, but allowing no reasonable time for submission of such additional proposals. Further, that on the previous day, the assistant county attorney had already approved a resolution for the legislature awarding the contract to Gordon’s Drugs.
The fact is that the meeting of the health committee on November 20 was adjourned because of petitioner’s complaint and at a subsequent meeting, on December 8, petitioner did submit additional proposals. As it turned out, the legislature decided not to consider these additional proposals and this decision is supported by counsel for the county in its memorandum as follows: “Such refusal to consider additional proposals is exactly what did occur. The members of the Legislature expressed their concern over the fact that initially, all parties were on an equal footing and given equal opportunity to bid on the Drustar type systems or equivalents. To allow additional proposals to be submitted and considered after the information, *732 which in good faith the bidders had submitted on a sealed bid basis,, became public knowledge, could only tend to inhibit participation by such pharmaceutical concerns and others in all future contracts with the County. To have accepted the proposal submitted by Goldwin-Kent after the bid opening would have been to give them an unfair advantage over the other bidders.”
As for the approval by the county attorney on November 19 of the proposed resolution awarding the contract to Gordon’s Drugs, we see no evidence of bad faith in it. It was within his duties to approve such resolution as to form, in advance, for consideration by the legislature. It was not within his jurisdiction to give or withhold actual award of the contract.
As pointed out, we see in this picture a lack of communication between various agencies of the Broome County government, some confusion and vacillation, but we find no evidence presented to us of collusion, bad faith, or arbitrary or capricious action which presents any question of fact justifying a hearing.
The petition is therefore dismissed.