**CLEVELAND (City), Plaintiff-Appellant v LAUSCHE, Mayor et, Defendant-Appellees**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19094.   Decided February 8, 1943.

T. A. Burke. Jr., law director, Cleveland, and Robert J. Selzer, Cleveland, for plaintiff-appellant.

Paul J. Hurd, Cleveland, J. C. Foster, Cleveland, and Harold T. Clark, Cleveland, for defendants-appellees.

422

## OPINION

By SKEEL, J.

The City of Cleveland has for a great many years maintained and operated a Zoological Garden, first in Wade Park and then, of late years, in Brookside Park. The purpose of a Zoological Garden is cultural and educational, and is an activity which a municipality clearly has a legal right to own and to operate.

The city, on April 24, 1940, through its council, passed a resolution directing the mayor's advisory committee and the committee on parks and public property of the city council to study the feasibility of entering into negotiations with the Cleveland Museum of Natural History to employ their services in the operation and management of the Brookside Zoo. The report of this committee was most favorable and on September 4, 1940, the city council by an emergency resolution authorized and directed the Director of Public Property to enter into an agreement for the development, operation and management of the Cleveland Zoological Garden by the Cleveland Museum of Natural History. Through all of their negotiations, as is made to appear by the resolution passed by the city council, resulting in the contract between the city and the museum which was signed and concluded on September 25, 1940, the city declared in effect that the operation of the zoo by the city had not been wholly successful; that the maintenance and operation of the zoo is a public service of great value to the citizens of Cleveland; that the people "do not desire to discontinue the zoo;" that the Cleveland Museum of Natural History has for twenty years closely cooperated with the parks department of the city in the interest of all forms of natural history and because of its broad experience and knowledge in the problems of successfully extending and operating the Zoological Garden and its ability to secure donations to supplement the funds necessary for its operation, it would be for the best interest of the city to take advantage of such skilled management and employ the services of the museum in the continued operation of the zoo; that by so doing the city will effect a substantial saving and increase the value of the Zoological Garden in the public interest.

The Cleveland Museum of Natural History, as established by the agreed statement of facts, is a corporation not for profit, organized under the laws of Ohio, its efforts being directed by public spirited citizens purposing only to contribute generously of their

time and money to the educational and cultural life of Cleveland, particularly with regard to subjects in the field of natural history.

The contract, after declaring the advantages accruing to the City of Cleveland in securing the services of the Cleveland Museum of Natural History as above set forth, provides in substance that the museum shall, in consideration of the appropriation and the payment to the museum of certain money as in the contract provided, manage, operate and develop the Cleveland Zoological Garden as in its opinion will best serve the interest of the people of Cleveland, and providing that no physical change shall be made in the plant and grounds of the zoo by the museum without the consent of the Director of Public Property; that the determination of what living creatures shall comprise the Zoological Garden collection is within the entire discretion of the museum, and for the purposes of carrying out the duties imposed upon the museum the city assigned the title to the collection of animals as it existed on the date of the contract to the museum together with all tools and equipment used in connection therewith "in trust, however, for the purposes only of carrying out the terms of the agreement and upon the termination of the agreement title to the property then constituting the zoo to revert to the city;" that the museum shall have the right to hire and discharge employees. provided, however, that existing contracts that have been made by the city under Section 2484, municipal code, should be carried out and Sections 197 and 198 of the charter of the City of Cleveland shall apply to the agreement.

Sections 197 and 198 of the charter provide that all contracts for public works shall stipulate that the contractor shall pay wages which are not less than those paid by the City of Cleveland for like work but if there be no established rate for such class of work then the wages shall not be less than paid by others employing men in like services and in no case shall the wages paid be less than $4.50 for eight hours and provided further against discrimination against citizens because of race, color, religion or national origin.

Section 198 provides that no person employed by either a contractor or sub-contractor on public work of or for the city, shall be paid less than $4.50 per day of eight hours and that no contract shall be entered into unless it so provides.

The contract further provided that the museum should make provision to place the mayor, the director of public property and the president of the city council of the city, or, in the event of such offices being abolished, then the persons occupying corresponding positions, on the board of trustees of the museum and also the museum shall create a committee of which the director of public property shall be a member, which committee shall "give active attention to the operation and development of the Brook-

side Zoological Garden so as to arouse and maintain increased public interest therein;" that upon the expiration of the present agreements for the operation of concessions, the museum shall conduct such concessions and the net profit used in the development and management of the zoo; that the museum shall pay all the cost of electricity, water, sewage disposal, telephones and make all necessary repairs but shall not be responsible for the making of repairs made necessary by lightning, fire, windstorm or like causes; that the museum shall make annual reports covering its operation of the Zoological Garden, which shall include recommendations for capital expenditures with the right to request the council of the City of Cleveland to appropriate additional funds for such purpose; that the report is also to include a detailed report of receipts and expenditures; that the city will pay the museum $50,000.00 per year for such services in equal monthly installments and also police the grounds, care for the roads and landscaping and the like; that the agreement shall operate from October 1, 1940, until terminated upon six months written notice given by one party to the other or after ten days notice to the city by the museum of the museum's desire to terminate the agreement because of the failure of the city to make the monthly payment.

The plaintiff's appeal upon law contends:

1. That the contract is ultra vires because the operation of the zoo is a governmental function and the duties necessary for its operation cannot be delegated to third persons.

2. That the contract is void because it was entered into upon the authority of a resolution which was passed as an emergency measure, when in fact none of the prerequisites for an emergency measure existed.

3. That the contract by reason of Section 108 of the city charter should have been authorized by ordinance and not by resolution.

4. That the resolution authorizing the employment of the museum's services was not preceded by a certificate that the funds to be expended were available as provided by Section 106 of the city charter.

5. That the operation of the zoo under the contract would be far more expensive than by city management.

6. That the museum is violating the city's contract with the donors of the ponies now at the zoo, by making a charge for pony rides.

7. That the museum is utilizing city property without proper authority and making a charge for parking automobiles thereon, keeping the funds derived therefrom and not depositing the same in the general fund of the city.

8. That the contract violates the rights of civil service employees then employed at the zoo.

9. That the contract in indefinite as to the trusteeship, no trustee being named in the contract.

We find no merit to the claim that the contract is indefinite, or that no trustee is appointed under the terms of the contract. The contract is complete in every detail and provides for an efficient plan of operation of the Zoological Garden. The museum is appointed the trustee of the property for the purposes of thereby being enabled to carry out its duties and render the services on behalf of the city as agreed upon by the terms of the contract. Likewise, the claim that the rights of civil service employees are violated is also without foundation. Civil Service employees' rights are duly fixed by the charter and supporting ordinances of the city of Cleveland, none of which are in any way in conflict with the provisions of this contract.

The question presented as to the charge made to the children for riding ponies, of five cents a ride, which is admitted by the museum, does not, under the state of the evidence, appear to violate any agreement of the city with Mr. Baker, the donor of the ponies. Certainly the museum's contract with the city is in no way involved with regard to that question and is broad enough in scope in any event to authorize the museum to do just what it is doing in regard to the use and keep of the ponies.

The establishing of the parking lot was a necessary act in the interest of public safety and security of the citizens of Cleveland who use their own automobiles to visit the zoo and in no way constitutes an admission charge to the Zoological Garden. The maintenance of a parking lot is in no way involved in the museum's contract with the city, except as to the duty to account for all income. This the museum has done as is shown by museum's exhibit 3.

Whether or not the operation of a Zoological Garden is, when conducted by a municipality, a governmental or propriety function, is open to considerable doubt with the greater weight of authorities and logic leaning to the conclusion that it is in fact proprietary. But whether it be one or the other is not of any moment in the instant case. The operation and maintenance of a Zoological Garden is a proper municipal activity and for which it may lawfully make expenditures of public funds.

With the history of the city's experience of operating the Zoological Garden, first at Wade Park and then at Brookside Park, in mind, (and the indifferent success thus attained as compared with Zoological Parks maintained in other cities) the mayor and council of the city set about to find a way to make the park of greater value to the people of Cleveland. A very diligent study conclusively pointed to the fact that the Cleveland Museum of Natural History, a corporation not for profit, and directed by outstanding public-spirited citizens who were devoting much time in the interests of natural history, were in a position to render the City of

Cleveland a most valuable public service. The thing that was most needed was the services of experienced people who were genuinely devoted to making the park an outstanding success and when viewed from that standpoint by the investigating committee they found that the Cleveland Museum of Natural History met every test. It cannot be seriously contended where the activity of operating a Zoological Garden comes squarely within a permissible function of a municipal corporation in the interest of promulgating public education, that the employment of the services of those who are capable of making such activity successful would constitute an ultra vires act. The park is, under the contract, operated as a muncipal function and the employment of the museum through which the affairs of the park are to be directed is not a delegation of authority nor does such an arrangement constitute the lending of the city's credit in the operation of a private business in violation of **Section 6 of Article VIII of the Constitution of Ohio.** This question was before the Court of Appeals of the First District in the case of **McGuire v Cincinnati, 22 OO 334,** on which the majority of that court come to the same conclusion.

The remaining questions have to do with the validity of the legislation authorizing the employment of the services of the Cleveland Museum of Natural History to direct the operation of the Cleveland Zoological Garden. It is claimed that the resolution should not have been passed as an emergency matter because the subject of the resolution was not, in fact, one which could be thus dealt with. The fact is that the resolution concerned itself directly with the operation of a municipal department, which clearly is the subject of emergency legislation.

The determination of the existence of an emergency under such circumstances is within the discretion of the city council and when by it determined will not be disturbed by the court.

Section 108 of the city charter provides as follows:

"All contracts involving any expenditure in excess of five hundred dollars ($500.00) shall first be authorized and directed by ordinance of council. When as authorized and directed, the director of the department involved shall make a written contract with the lowest responsible bidder, after advertisement once a week for two consecutive weeks in the City Record. There shall be no splitting of orders to avoid the effect of this section and any contract made contrary to or in evasion of the foregoing provisions of this section, shall be illegal and void."

This provision does not apply to legislation providing for the the employment of the kind of services herein being considered which in a very real sense are professional in character. The council, therefore, both under the constitution and laws of the

state and the provisions of the city charter, had the power to authorize the contract entered into between the city and the museum.

The judgment of the lower court is therefore affirmed. Exceptions.

LIEGHLEY, P. J., and MORGAN, J., concur.