Joseph C. O'BRYAN, Appellant,

v.

CITY OF LOUISVILLE, Louisville Zoological
Commission, Inc., et al., Appellees.
Chester W. JENNINGS, Appellant,

v.

CITY OF LOUISVILLE, a Municipal Corp.,
et al., Appellees.

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Oct. 23, 1964.

James B. Young, Louisville, for Jennings.

James E. Thornberry, Louisville, for
O'Bryan.

Eugene H. Alvey, James W. Menefee, S. L. Greenebaum, Louisville, for appellees.

DAVIS, Commissioner.

These appeals present the question whether the City of Louisville may operate a zoo pursuant to plans it has adopted. The Jefferson Circuit Court sustained the validity of the city's proposed zoo operation. In these consolidated appeals, taxpayers challenge the judgment, asserting two bases for reversal: (1) Louisville is not authorized to operate a zoo; (2) even if it may operate a zoo, the method proposed is illegal as violative of constitutional provisions.

The parties stipulated the facts. Pursuant to resolution of Louisville's Board of Aldermen, dated January 23, 1963, the Mayor of Louisville was authorized to and did execute for the city an agreement with James Graham Brown Foundation, Inc. (herein referred to as Foundation). Since appellants premise much of their attack upon the *modus operandi,* we summarize the provisions of the January 23 agreement between the city and the Foundation: (1) The city and the Foundation agreed to cause to be formed a nonprofit corporation pursuant to KRS Ch. 273. The purposes of the corporation shall be "in general to establish and manage the zoo and those purposes, its specific powers and duties in connection therewith shall be as set out in its Articles of Incorporation which shall be in substantially the form attached * *." (Such corporation will be referred to as the Commission.)

(2) The city and the Foundation, acting through the Mayor and Mr. J. Graham Brown, or other nominees of theirs, shall constitute "The Committee," whose duties and powers include selection of a zoo site, selection of architects, engineers and other qualified technicians whose duties shall include preparation of plans and specifications for construction of the zoo, arranging for and supervising the construction of the zoo and necessary facilities, and the installation of wildlife exhibits. The Committee was empowered to plan and prepare a suitable schedule for the construction, opening and development of the zoo, and to arrange for the Commission to employ a Director of the zoo as soon as feasible.

(3) As soon as a zoo site has been selected the city is to make the site available to the Commission for a zoo, by "license, lease or conveyance."

(4) The city agreed to furnish, without cost to the zoo, the required surveys and maps, and to install sewers and facilities for public utilities. The city agreed to construct the needed walkways and roads to and in connection with the zoo.

(5) The Foundation agreed that, upon compliance by the city with the foregoing conditions, the Foundation will contribute to the Commission $1,500,000 to defray costs of construction of the facilities for the zoo and to provide for acquisition of animals. Details as to payment, not necessary for consideration here, were provided.

(6) The city and the Commission shall provide all funds required for the operation of the zoo from its inception; the Foundation's liability is expressly limited to the sum of $1,500,000.

The contemplated corporation (the Commission) was established February 1, 1963. The Mayor placed $5,000 from the Mayor's contingent fund at the disposal of the Commission; disbursements were made from that fund by the city's Director of Finance on order of the Mayor. It is clear that all such disbursements were for items relating to the ultimate establishment of a zoo.

The Board of Aldermen created an item in the city's budget for 1963–1964 in the sum of $19,098.20, payable from the city's general funds. The item was for the uses and purposes of the Commission; it is shown that the Director of Finance has disbursed money from that budgeted fund, on order of the Commission, for various expenses incidental to the establishment of the zoo. The regular salary of Dr. Ivo Poglayen, Director of the Zoo, has been

paid from a city fund appropriated to the Commission by the Board of Aldermen since July 1, 1963. It is admitted that Dr. Poglayen is not an employee of any recognized branch of the government of the City of Louisville. He was selected as Director of the Zoo by action of the Board of Commissioners of the Commission.

On July 31, 1963, after hearing recommendations from the Commission, the Board of Aldermen of Louisville authorized the Mayor and Director of Parks and Recreation to negotiate for the purchase of a zoo site; the proposed site was identified with particularity.

On September 11, 1963, the city enacted an ordinance amending a portion of the Master Plan of the city so as to permit the site area to be used for park purposes, including the establishment of a Zoological Garden.

On the same date the Board of Aldermen adopted an ordinance authorizing the Mayor and Director of Parks to enter into a "license agreement" with the Commission, to permit the Commission as agent for the city to install, operate and maintain a zoo and any facilities and enterprises reasonably customary and appropriate thereto.

The license agreement recites that the city proposes to acquire the zoo site, and promptly after such acquisition the license to the Commission shall become effective, subject to the city's right to terminate it at will. The license agreement substantially incorporates the recitations of the January 23rd agreement between the city and the Foundation, and provides that "Subject always to the advice, approval and direction of the City acting by and through its Department of Parks and Recreation, and as the City's agent, the Commission shall" manage the zoo.

■ The parties recognize the rule that a municipality possesses only those powers expressly granted by the Legislature, plus such powers as may be necessarily implied and properly incident to the granted powers. City of Harrodsburg v. Southern Ry. Co., Ky., 313 S.W.2d 864.

■ It remains then to ascertain whether Louisville, a city of the first class, has the power to establish and maintain a zoo. The chancellor found that it does possess such power, and we agree. Although there is no statute specifically authorizing zoo operation, it appears clear that KRS 97.010(1) affords ample statutory basis for the activity. We think it may not be doubted that a zoo qualifies for inclusion in the statute's authorization of "parks, playgrounds and recreation centers." McQuillin, Municipal Corporations, 3rd ed., § 28.51; 38 Am.Jur., Municipal Corporations, § 562; City of Cleveland v. Lausche, 71 Ohio App. 273, 49 N.E.2d 207. Since we conceive that KRS 97.010(1) accords ample authority for the operation of a zoo by a Kentucky city, we do not reach the question whether various other statutory provisions may also grant the authority.

As it is clear that Louisville may operate a zoo, the question is whether the proposed plan is a legal mode of so doing. Appellants contend that Kentucky Constitution, §§ 157, 162 and 179, are offended by the plan; we are unable to concur.

■ Section 157 prohibits a municipality's becoming indebted to an amount exceeding, in any year, the income and revenue provided for such year, without the voted assent of two-thirds of the voters. Any contract violative of the section is void. Here there is no showing that Louisville has incurred or contracted to incur such a debt. Indeed, there is no showing whatever in this regard. Moreover, the city's obligation to defray the expenses of the operation and maintenance of the zoo may be terminated at the will of the city. Under these circumstances, there is no merit in appellant's argument on this point. Williams v. Estill County, 253 Ky. 417, 69 S.W.2d 683; City of Covington v. Moore, 218 Ky. 102, 290 S.W. 1066.

 Section 162, Kentucky Constitution, prohibits payment by a municipality of any claim created against it by an agreement or contract made without express authority of law. Since the city is authorized to maintain a zoo, it is apparent that the cited constitutional provision is inapplicable.

Neither is § 179, Kentucky Constitution, contravened. By its terms, the constitutional provision deals with what the general assembly may authorize a city to do. No such question is presented. Additionally, the funds of Louisville are not being appropriated for the benefit of a private corporation; on the contrary, the funds are to be used for the city's purpose in operating the zoo. The Commission, "subject always to the advice, approval and direction of the City," is to supervise the expenditure of the city's funds on behalf of the city. That it is appropriate for a municipal corporation to use others in the performance of certain administrative or ministerial functions is established. Jefferson County v. Jefferson County Fiscal Court, 220 Ky. 678, 299 S.W. 209; Board of Trustees of House of Reform v. City of Lexington, 112 Ky. 171, 65 S.W. 350.

We hold that there is no illegal delegation of authority. The last cases just cited above clearly recognize the power of a municipal corporation to use others in the performance of administrative and ministerial duties; moreover, the tendency of this and other courts is to realistically recognize that even legislative power, in particular instances, may indeed be delegated. Commonwealth v. Associated Industries of Kentucky, Ky., 370 S.W.2d 584. It is to be noted that Moremen, J., speaking for the court in the Associated Industries opinion, said: "There is nothing wrong with this [delegation of legislative power] so long as the delegating authority retains the right to revoke the power." 370 S.W.2d 588, op. cit.

Thus, even if it were assumed that the instant case presents a true delegation of legislative power (which we do not believe it does), nevertheless, under the authority just cited, such a delegation would not vitiate the plan—in light of the city's unqualified right of revocation.

Appellants sought, in the trial court, to make capital of the change in the Master Plan of zoning, which change so enlarges the permitted uses as to include a zoological garden. The point is not argued in appellants' brief; we do not consider the point. RCA 1.210(a)2. We observe that the trial judge saw no significance in it; neither do we.

The judgment is affirmed in each appeal.