**C. Martin PERSONS, M.D., Appellant,**

v.

**The CITY OF FORT WORTH, Appellee.**

**No. 2–88–180–CV.**

Court of Appeals of Texas,
Fort Worth.

May 31, 1990.

Gould, Broude & Nelson, Susan J. Wilson, Warren H. Gould and Janna Ward Clarke, Fort Worth, for appellant.

Wade Adkins, City Atty., and William W. Wood, Deputy City Atty., Fort Worth, for appellee.

Before WEAVER, C.J., and LATTIMORE and MEYERS, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant, C. Martin Persons, M.D., appeals from the judgment of the trial court

which denied his request for injunctive and declaratory relief against the City of Fort Worth ("City"), appellee. We affirm.

This dispute grew out of certain actions or planned actions by the City respecting the erection of certain facilities and the expansion of the City zoo located in a City park. Appellant alleged that the activities of the City had been undertaken without compliance with compulsory notice and hearing provisions of Chapter 26 of the Texas Parks and Wildlife Code ("Chapter 26"), and without compliance with and in violation of the City's zoning ordinances. Appellant sought to have the City enjoined from proceeding further with such activities during the pendency of the suit and thereafter until the City complies with the provisions of both Chapter 26 and its own zoning ordinances. He asked for a declaratory judgment holding that the City was required to comply with both the notice and hearing provisions of Chapter 26. He also sought a court order requiring the City to return the parkland to the state in which it existed prior to construction.

The City, by its cross-action, sought a declaratory judgment holding that the appellant had no standing to complain of the alleged failure of the City to comply with the provisions of Chapter 26 and with the provisions of the City's zoning ordinances; that the provisions of Chapter 26 do not apply when a city approves a project which involves its own public lands or when the plan proposes land used for a park purpose be used for another park purpose; that the proposed plan for the Forest Park Zoo is a park use; and that a judicial review of a project, subject to Chapter 26, is barred unless the petition for review is filed within thirty days after the approval or disapproval is announced.

The trial court issued a temporary restraining order and a temporary injunction enjoining the City from conducting certain construction activities and from issuing certain certificates of occupancy for the Texas Diorama during the pendency of the trial. Following a bench trial, the trial court dissolved the temporary injunction against the City; denied all declaratory and injunctive relief sought by the appellant; granted the declaratory judgment sought by the City to the extent that Chapter 26 does not apply when the subject plan or program proposes public land presently used for park purposes be used for another park purpose, and to the extent that the construction, operation, maintenance, and expansion of the Forest Park Zoo, including the Texas Diorama, as proposed by the Master Zoo Plan, is a park use. The trial court denied the recovery of attorney's fees by each party. The appellant brings five points of error and the City raises three cross-points.

The actions of the City which are here under attack by appellant involved its plans for expanding the City zoo and for developing the City zoo and park, known as Forest Park. This park was established in 1909, and consists of 233 acres of public land owned by the City and located near downtown Fort Worth. The City zoo is located in the park and has likewise been a part of the park since it was established.

Prior to the approval and implementation of these plans, the zoo was situated on thirty-one acres. The zoo area was fenced and will continue to be fenced after the expansion. It has limited access for which an admission fee is charged, and it has limited hours of operations and limited activities which can be pursued within its boundaries. The remainder of the park was unfenced, with free access to the public, subject to the City curfew ordinances. Located in this portion of the park were numerous wooded and open areas, streets and parking facilities, and various recreations facilities such as baseball diamonds, soccer fields, volleyball courts, tennis courts, picnic areas, a swimming pool, a miniature train, and children's rides. It also contained an area known as the Log Cabin Village situated on 2.7 acres.

The activities of the City were approved under two separate plans. The first was the Fort Worth Zoo Master Plan which was adopted by the City Council on September 23, 1986. This plan provided that approximately nine acres of the adjoining parkland be added to the zoo. The plan also provided for the construction of various facilities

depicting Texas heritage and culture, known as the Texas Exhibit or the Texas Diorama ("Diorama").

Construction on the Diorama was commenced in the summer of 1987. Subsequent to that time, the City Council approved certain changes in the plans for the Diorama so as to include nine buildings instead of six buildings as initially approved, and so as to increase the size of the park area to be added to the zoo from the initial nine acres to approximately eleven acres.

Construction was continuing on the Diorama at the time appellant filed this suit on May 3, 1988. The structures that had been completed or which were then being constructed under the Diorama plan included a family center (a replica of an old Texas saloon, including a restaurant and an auditorium), a barn, ranch house, schoolhouse, blacksmith shop, chicken coop, windmill, and a gazebo. The testimony shows that these facilities are to be used for recreational and educational purposes in conjunction with the operations of the zoo.

The second plan is the Forest Park Master Plan. This plan was submitted to the City by the Fort Worth Zoological Association on October 6, 1987. The plan, with modification, was adopted by the City Council on November 10, 1987. The modified plan, known as the Forest Park Plan, provides for further expansion of the zoo area, in addition to the eleven acres previously taken for the Diorama, and includes, among other things, proposals for an African Savannah, World of Rivers, South American Exhibit, and a maintenance complex.

The areas of the park which will be brought into the zoo had previously contained tennis courts and various other recreational facilities, some of which have been or will be destroyed or removed under the plans and which will no longer be available for free access to the public. The City maintains that such recreational facilities can be situated in other areas of the park.

The fenced area of the zoo, as expanded, divides the remainder of the park into two separate portions. One portion is referred to as North Forest Park, being the large portion of the park located north of the zoo. The other portion is referred to in the testimony as South Forest Park, the equivalent of a neighborhood park, with some picnic tables, located on a narrow strip on the south side of the zoo. The zoo fence prevents free access directly between the north and south portions of the remaining park area.

## STANDING

We will first consider the City's cross-point of error number one which challenges appellant's standing to seek injunctive and declaratory relief regarding alleged violations of Chapter 26 and cross-point of error number two which attacks the appellant's standing to bring this action with respect to alleged violation of the City's comprehensive zoning ordinances. The trial court heard testimony bearing on appellant's standing, and concluded that the appellant met the traditional concepts of standing. The City claims that the trial judge abused his discretion in holding that appellant had standing.

■ Unless standing is conferred by statute, the common-law rule in Texas is that a person seeking to enjoin the actions of a governmental body must plead and prove that he has suffered "special injury," i.e., he must allege and show how he has been damaged or injured other than as a member of the general public. *Scott v. Board of Adjustment*, 405 S.W.2d 55 (Tex. 1966). The City cites *Crump v. Perryman*, 193 S.W.2d 233 (Tex.Civ.App.—Dallas 1946, no writ) as authority for applying the same standard regarding standing for seeking relief from an alleged violation of the City's zoning ordinances. The City claims that appellant has failed to sustain this burden.

In response to these cross-points, we have searched the record to determine whether appellant has pled and proved that any harm or injury or damages suffered by appellant, as a result of the City's actions, are special or peculiar to him, separate and apart from those suffered by the general

public, so as to afford him standing in this case.

Appellant's pleadings do not allege that he suffered any special injury or has been damaged or injured other than as a member of the general public. His pleadings do contain the following statements or allegations:

The park has served as "a place to which the public at large has resorted for recreation, air and light."

"The violation of [Chapter 26] will lead to irreparable harm to the Plaintiff by depriving him of the right to use and enjoy Forest Park without the due process afforded by law...."

Plaintiff as an individual, uses the park and enjoys the park and "the beneficial use made of the park by other citizens of Fort Worth."

"Plaintiff, and others similarly situated, will no longer be able to use the park for its prior uses...."

"[T]he citizens of the City of Fort Worth are entitled to rely on the zoning ordinance of the City...."

He also alleged that the change in use of the parkland will cause substantial detriment to the surrounding parkland and adjacent neighborhood, and that his individual property will be depreciated. However, there is no proof in the record as to the extent or amount of any property depreciation which the appellant might have claimed. In fact, appellant testified that he seeks only injunctive relief in this case and that he is not asking for any monetary compensation in the lawsuit.

Appellant claims in his reply brief that his special circumstances uniquely qualify him to seek the injunction requested in this case, because he is a citizen of the City, a member of the public at large, the owner of a home in the neighborhood adjacent to the park, a user of the park, and a taxpayer. He also contends that a member of the public has standing to scrutinize unauthorized acts of the trustees of public parklands, and that he has standing, as afforded to all citizens, to challenge the acts of the City which are outside the bounds of the law.

His complaints about the changes in the park and zoo are that he personally does not approve of what the City was doing and as to what portion of the park was being used for the zoo expansion. His testimony as to harm or injury suffered by him, as a result of these activities, was limited to his personal inconveniences and the inconveniences to his family in having access to and use of the park after the changes were made. He has been a resident of Fort Worth and a taxpayer for nine years. At the time of trial, he had owned his present home for about three years, and had lived there with his wife and three children, ages seven, five, and four months. The house is located in a neighborhood which is adjacent to and south of the park. He chose this area because he thought it was one of the prettiest areas in town, the neighborhood was adjacent to the parks, it was centrally located, and a lovely area. His house is some two blocks from the park. Neither his property nor the street he lives on abut the park. In fact he cannot see the park from his house. He testified that he has been a user of the park ever since he moved to Fort Worth, and uses it every week or two weeks, usually on evenings and weekends.

Construction was commenced on the Diorama in the summer of 1987, including the relocation of the fence to include the eleven or so acres of parkland brought into the zoo under the Diorama plans. Prior to that time appellant and his family could enter the park from the south and from there bicycle or walk to the northern portion of the park. He complains that the zoo fence, which now divides the southern and northern portions of the park, restricts his access to the park because he can no longer get to the northern part of the park from his neighborhood by bicycle or by walking. He testified that he still has access to the park, as any other citizen would, but in order for him to now walk or ride a bicycle in the northern portion of the park it is necessary to go by car from his neighborhood, down McCart or University Drive, to other park entrances.

Regarding his use of the park, he testified that "they [the City] have put up a fence that absolutely precludes my entry into an area which was previously open." This testimony apparently had reference to the park area that was brought into the zoo, the entry to which is subject to an admission fee, since his other testimony shows that he continues to have access, although not as convenient to him as he would like, to all of the park. Appellant concedes that the Diorama will be open to him if he is willing to pay an admission fee.

Appellant also testified at length as to numerous uses he and his family made of the park prior to the construction of the Diorama and the zoo fence. He testified that they used the park for walking and bicycling every two or three weeks; for playing catch, throwing a softball or baseball; for playing volleyball, tennis, and soccer, although appellant has never played soccer.

They also used the park for observing nature and wildlife; for sitting under a tree, relaxing, reading a book, and watching animal life; for sunbathing and watching other people sunbathe; for watching a dog catch a frisbee; watching men hit golf balls; for watching people play croquet and horseshoes; and for watching hot air balloon ascensions.

The appellant also swung his children on the park swings; and they rode the merry-go-round, miniature train, and other children's rides in the park, and the appellant testified that he on one occasion used the park swimming pools.

They would also sit at picnic tables and the barbecue benches in the park and eat or drink cokes, but not for "full-blown" picnics; they also used the picnic areas and open areas of the park for family and group meetings for recreation and for teaching "socializing" skills. The appellant also takes his children to the City zoo once or twice a year.

The record does not reflect, and the appellant does not contend, that his uses of the park are unique or peculiar to him as compared to the park uses by the public at large. He admits that the park is used by people from all over Fort Worth, and that he does not have a greater right to use the park than any other citizen of the City. The record also reflects that after the implementation and construction of the Diorama and other improvements under the Fort Worth Zoo Master Plan and the Forest Park Master Plan, the appellant will still be able to use the park for the purposes and activities which he enjoyed prior to the construction. His primary complaints appear to be that some of these park activities, which he previously enjoyed on the eleven acres which have been brought into the Diorama, being appellant's favorite area of the park and dear to his heart, must now be conducted in other areas of the park which are not as conveniently accessible to him as before. These complaints respecting changes in the park uses are not shown to be unique or peculiar to the appellant as compared to the public at large.

We hold that appellant does not have standing to maintain this action with respect to the alleged violations of Chapter 26, because, as conceded by appellant, such standing is not specifically granted by statute, and because the appellant has not shown that he has been damaged or injured as a result of the City's actions other than as a member of the general public.

In so holding, we are guided by the following decisions. *Scott,* 405 S.W.2d 55; *Bolton v. Sparks,* 362 S.W.2d 946, 951 (Tex.1962) (private individual cannot maintain a suit to enjoin alleged violation of a penal ordinance unless the activity complained of results in damages to such person, peculiar to him, and not common to the public in general); *Tuck v. Texas Power & Light Co.,* 543 S.W.2d 214, 215 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.) (holding that a resident seeking to annul an ordinance of a home rule city providing for an electric rate increase had no justiciable interest in the controversy, and stating that to have standing he must have a justiciable interest distinguishable from the public in general); *Marshall v. City of Lubbock,* 520 S.W.2d 553, 555 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.) (taxpayers seeking a

declaratory judgment that monies received from the sale of municipal bonds must be expended for capital projects had no justiciable interest and no standing); *Tri County Citizens Rights Org. v. Johnson,* 498 S.W.2d 227, 229–30 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.) (private citizen had not established a justiciable interest and had no standing to prevent the Texas Parks and Wildlife Commission from enforcing a no open season declaration on game animals and birds on county-owned land); *Pierce v. Southern Pac. Co.,* 410 S.W.2d 801, 802 (Tex.Civ.App.—Waco 1967, writ ref'd) (plaintiff had no justiciable interest and no standing to enjoin the railroad company, who dedicated part of its right of way for park purposes, from using such property for other than park purposes); *Halpenny v. City of San Antonio,* 351 S.W.2d 939, 941 (Tex.Civ.App.—San Antonio 1961, no writ) (plaintiff had no justiciable interest and no standing to seek mandamus to compel the City to call a special election for purpose of submitting to the electorate the question of whether a City park, or parts thereof, should be used for purposes other than its dedicated use as parkland); and *San Antonio Conserv. Soc'y v. City of San Antonio,* 250 S.W.2d 259, 263 (Tex.Civ.App.—Austin 1952, writ ref'd) (Society had no justiciable interest and no standing in its suit for declaratory judgment and to enjoin construction by the City of a bridge across the river in a riverside public park).

We take notice that the courts have in some situations recognized the standing of individuals or citizens to maintain injunctive or declaratory judgment actions against public or quasi-public entities. In *Touchy v. Houston Legal Found.,* 432 S.W.2d 690, 694 (Tex.1968), the supreme court held that four attorneys had standing to enjoin the Houston Legal Foundation from practices in violation of Canon of Ethics due to the special interest attorneys have in their profession. In *Texas Hwy. Comm'n v. Texas Ass'n of Steel Importers,* 372 S.W.2d 525, 530–31 (Tex.1963), the supreme court held that the plaintiffs, owners of imported manufactured products, had a justiciable interest and standing to

maintain a declaratory judgment action against the Texas Highway Commission respecting its order requiring all materials on construction contracts be manufactured in the United States. These cases are distinguishable from the case before us because the parties pursuing those actions had an interest in the litigation separate and apart from the interest of the general public. We are also aware of the holding in *Safe Water Found. v. City of Houston,* 661 S.W.2d 190, 193 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), *appeal dismissed for want of a substantial federal question,* 469 U.S. 801, 105 S.Ct. 55, 83 L.Ed.2d 6 (1984), recognizing standing on behalf of the Foundation to enjoin the City from putting fluoride in City water, and the reference in that case to a gradual trend away from the strict requirements of standing as applied to special injury or justiciable interest. We do not consider that case, nor the authorities referred to therein, as overruling the common-law rule, requiring a party seeking to enjoin a governmental body to plead and prove that he has suffered special injury, as provided in *Scott,* 405 S.W.2d at 56.

In *City of Fort Worth v. Groves,* 746 S.W.2d 907, 912–13 (Tex.App.—Fort Worth 1988, no writ), the sole case cited by appellant on this point, this court held that a citizen and taxpayer had standing to challenge the propriety of notice under the Open Meetings Act, TEX.REV.CIV.STAT. ANN. art. 6252–17, sec. 3 (Vernon Supp. 1990), which Act specifically granted standing to any interested person. The court particularly noted in *Groves* that the matter of the complainant's "private" standing was not necessary to the disposition of that issue. *Groves,* 746 S.W.2d at 913. The *Groves* court then went on to hold that the complainant had no standing to contest the lease there in question with respect to the special revenue bonds, holding that he had not shown damages special to himself. *Id.* at 917. That case does not support appellant's claim of standing, respecting the City's alleged violation of Chapter 26, under the circumstances of the instant case.

■ In an additional subpoint under cross-point of error number one, the City contends that if appellant had standing under Chapter 26 to challenge the validity of its action respecting the park in this case, that appellant is nevertheless barred from asserting said challenge because the lawsuit was not filed by appellant within thirty days after the City's approval of these actions was announced, as required by section 26.003 of the Texas Parks and Wildlife Code. Neither party cites any cases bearing on this subpoint.

As discussed under appellant's points of error one and two below, the City denies that Chapter 26 applies to the facts of this case and it also denies that appellant has standing under Chapter 26 to bring this action. The City here contends that if appellant had such standing that he forfeited such standing by failure to bring the suit within the prescribed thirty-day period.

The record shows that the City did in fact hold numerous public hearings pertaining to these park activities and that notices of such hearings were published in the newspaper. The appellant himself personally attended and participated in a number of these hearings, including five of the twelve hearings held by the Park and Recreational Advisory Committee commencing as early as March 1987, and he attended four hearings before the City Council commencing as early as May 1987, and including the two City Council meetings held in October and November 1987, at which the Forest Park Plan was adopted and then modified, being some six months prior to the filing of this case by appellant, one of which City Council meetings the appellant attended disguised as Smokey the Bear.

The record further reflects that the appellant had personal knowledge of various park undertakings planned by the City, including the Zoo Master Plan and the Diorama, as early as March 1987, and that he learned that construction of the park changes was underway as early as May 1987.

In addition to his attending these meetings and his awareness of the construction activities in the park, the record further shows that the appellant was, in fact, personally instrumental in sending a letter to the City proposing a contract with the City under which the retail concessions and facilities in the zoo and Diorama, including the sale of food, beverages, gifts, souvenirs, clothing, and related items be operated and managed by Forest Park Association, a nonprofit corporation of which appellant was a member. This letter was signed by appellant and others on behalf of such association and was dated September 23, 1987, some seven and one-half months before appellant instituted this lawsuit.

Under the circumstances of this case, we agree with the position taken by the City and hold that the standing of appellant, if any, to bring this action under Chapter 26 is barred for failure to timely file such action as required under TEX.PARKS & WILD.CODE ANN. sec. 26.003 (Vernon Supp.1990). The City's cross-point of error number one is sustained.

■ We also sustain the City's cross-point of error number two and hold that the appellant is without standing in this case to challenge the alleged violations by the City of its zoning ordinances, because the appellant has not pled and proved that he suffered damages or injury other than as a member of the general public. *Scott*, 405 S.W.2d at 56; *Crump*, 193 S.W.2d at 236. *See also Lower Valley Residents Ass'n v. City of El Paso*, 466 S.W.2d 436 (Tex.Civ.App.—El Paso 1971, no writ) in which a private corporation was held to have no standing to mandamus the City to enforce its zoning laws, and to cause the City to cease construction in certain areas in violation of city ordinances, because the suit involved a right shared in common with all of the people of El Paso and with the public in general.

The appellant cites *Housing Auth., Etc. v. State ex rel. Velasquez*, 539 S.W.2d 911 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), as supporting his standing on this issue, which argument we must reject. In that case the plaintiffs, occupants of a low-income housing project, sued the Housing Authority for the City of Harlingen

challenging the legality of certain expenditures by the Housing Authority. In holding that the plaintiffs had standing, the court agreed with their argument that they had standing because the payments under attack, if unauthorized, caused economic injury to them. The appellant has not shown any such economic injury to him in the instant case. The City's cross-point of error number two is sustained.

In the interest of judicial economy, and while this record is currently spread before us, we will address appellant's points of error for consideration only in the event it should be determined that our disposition of the above cross-points is erroneous.

## APPLICABILITY OF CHAPTER 26 TO CHANGES OF A PARK USE TO ANOTHER PARK USE

■ Appellant asserts under point of error number one that the trial court erred in holding that Chapter 26 does not apply to a program or project which changes the use of public land from one park use to another.

The pertinent provisions of Chapter 26 are as follows:

(a) A ... *municipality* of this state may not approve any program or project that requires the use ... of any *public land* designated and used prior to the arrangement of the program or project as a *park*, recreation area, scientific area, wildlife refuge, or historic site, unless the ... municipality, acting through its duly authorized governing body or officer, determines that:

(1) there is no feasible and prudent alternative to the use ... of such land; and

(2) the program or project includes all reasonable planning to minimize harm to the land, *as a park* ... resulting from the use....

TEX.PARKS & WILD.CODE ANN. sec. 26.001(a) (Vernon Supp.1990) (emphasis added). As the court found, "[p]aragraph (b) of that section requires that these findings can be made only after a public hearing and Section 26.002 sets out the proce-

dure to be followed in giving notice and publicizing the project and the hearing."

Although certain notices were given and various hearings were held respecting these activities, the City concedes that such notices and hearings did not comply with the provisions of Chapter 26, and took the position that it is not required to comply with such notice and hearing provisions when the subject plan or program proposes that public land presently used for park purposes be used for another park purpose. The trial court sustained the City's position and entered judgment denying appellant's petition for declaratory and injunctive relief for alleged violations of Chapter 26.

The judgment further ordered, adjudged, decreed, and declared that the Fort Worth Zoo and the Zoo expansion at issue here constitute a park and a park use of the lands involved; and that Chapter 26 of the Texas Parks and Wildlife Code does not apply to changes from one park use to another park use where, as here, the change is not a "change of use."

In addition to the declaration, or findings set out in the judgment, as referred to above, the trial court filed the following findings or conclusions relative to this issue:

Forest Park and its zoo is *public land* which is a *park*. Any program or project of the City which would "take" (an issue not present here) or "use" that public land cannot be undertaken without compliance with Section 26.001. Is the expansion of the Forest Park Zoo a use of public land previously used as a park within the meaning of this law? It is not. [Emphasis in original.]

"Use" is how something is employed. Here the land is employed or devoted to use as a park. Under Texas law a "park" is a pleasure ground set aside for the recreation of the public and to promote health and enjoyment. While there is no Texas law on point, the parties agree that a zoo is a "park" or type of "park purpose" and that is the law elsewhere. [Citations omitted.]

The statute seeks to protect a particular category or kind of use—here a "park"

use—from other uses. This can be clearly seen by the purpose expressed "to minimize harm to the land, *as a park* ... " The desire is that, if at all feasible, the land be used after the project for the purpose it was used before the project was implemented.

Forest Park is as susceptible to use as a "park" after the expansion of the zoo as it was before, although not always in the same way, or with the same activities in the same places or as in optimum a fashion perhaps as before.

Despite the shortcomings of the plan ... the park is still capable of being used as a recreational pleasure ground for public health and enjoyment.

....

Section 26.001, while applicable to the City generally, does not come into play where the project is of the same type or character as the use sought to be protected and the land is capable of being employed for that use after implementation of the project even as before. The activities may be different, access may be different, hours of use may be different, but the fact remains that this park is still a park with a zoo in it and that it is an ornament open for public exercise and amusement as it was before.

....

After the construction of the fence surrounding the diorama that area no longer contained tennis courts, picnic tables and the like, and the natural setting is being altered. Once construction is completed that area will be used for a different type of park use, i.e., a "zoo," than before with the area accessible only by paying an admission fee and only during hours of zoo operation.

The fencing of other open space areas under the "Forest Park Plan" to encompass them within the zoo will make those areas accessible only by payment of a fee and only during hours of zoo operation and only for recreational activities consistent with its use as a zoo.

Appellant, while attacking the trial court's interpretation of Chapter 26, states that there are no Texas cases on point as to this issue, and cites us, in support of his contention, three foreign cases relating to the placement, location, or alignment of a highway or freeway near or adjacent to a park as construed in connection with the Department of Transportation Act, 49 U.S. C.S. app. sec. 1653(f) (repealed 1983) and Federal–Aid Highway Act, 23 U.S.C.S. sec. 138 (Cumulative Supp.1990): *Conservation Soc'y, Etc. v. Secretary of Transp.*, 362 F.Supp. 627 (D.C.Vt.1973), *aff'd*, 508 F.2d 927 (2nd Cir.1974); *Citizens for Mass Transit Against Fwys. v. Brinegar*, 357 F.Supp. 1269 (D.C.Ariz.1973); and *Brooks v. Volpe*, 460 F.2d 1193 (9th Cir.1972). Appellant also cites us *Illinois Central R.R. v. Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892) for the proposition that his interpretation of Chapter 26, by which its provisions are applicable even when the change of use of public land is from one park purpose to another, is supported by the principle of "public trust." We do not consider the authorities cited by appellant as controlling on this issue.

The trial court found that Chapter 26, originally enacted in 1969 as article 5421q, Revised Civil Statutes, was patterned after the Federal–Aid Highway Act, 23 U.S.C.S. sec. 138, and both parties, in their briefs, discuss the similarities in the language of Chapter 26 and the Federal Act, in support of their respective positions. We have been cited nothing in connection with the legislative history of the Federal Act bearing directly on whether Chapter 26 applies when the change in the use of public land is a change from one park use to another park use.

In interpreting and applying Chapter 26, we must keep in mind that the cardinal rule in statutory construction is to ascertain the legislative intent. *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982); *see also* TEX.GOV'T CODE ANN. sec. 312.005 (Vernon 1988). In determining the intent of the legislature and interpreting and applying a statute to give effect to the legislative intent, courts are guided by the accepted canons of statutory construction. One of the fundamental tenets of statutory construction is that a statute

should be construed as a whole rather than by examination of isolated portions taken out of context. *Hammond v. City of Dallas,* 712 S.W.2d 496, 498 (Tex.1986); *see also* TEX.GOV'T CODE ANN. sec. 312.-002(b) (Vernon 1988). It is also well established that every sentence, clause, phrase, and word of a statute is to be given effect, if possible. *Moore v. Sabine Nat'l Bank,* 527 S.W.2d 209, 212 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

When reviewed as a whole, and taking into account the constituent parts of the entire statute in their proper context, it is clear that Chapter 26 was not intended to and does not apply to projects which propose the use of parklands for other park purposes. Rather, it applies only where the project involves a diversion of land from park to nonpark use. The statutory language of Chapter 26 makes this clear for two reasons:

First, section 26.001(a) is applicable by its terms to programs or projects on:

> [P]ublic land designated and used *prior to the arrangement of the program or project* as a park....

TEX.PARKS & WILD.CODE ANN. sec. 26.001(a) (emphasis added). The reference to the *prior* use of the land as a park clearly implies that the land will be used for something other than a park *after* the implementation of the program or project. This is the only way that the words "prior to the arrangement of the program or project" may be given effect. To hold otherwise would effectively excise these words from the statute. But the words are there, and it must be assumed that the legislature employed them for a particular reason, to wit, the section is to apply to diversion of parkland to nonpark uses, and not to the use of parkland for other park purposes.

Secondly, the whole thrust of section 26.-001(a)(2) is to require that certain findings be made by the governing body after notice and a hearing. One of the two required findings is that:

> [T]he program or project includes all reasonable planning to minimize harm to the land, as a park....

*Id.* A necessary consequence of the use of this language is that the program or project must involve a use of the land for a nonpark purpose. We fail to see how parkland is *harmed* when continued to be used for a park purpose. Parkland exists to be used for park purposes, and, of course, there are many varieties of park uses. Chapter 26 does not categorize or prioritize these different park uses, and nothing in the statute evidences an intent to favor one type of park use over another.

We agree with the trial court's interpretation of Chapter 26, and hold that Chapter 26 does not apply where the proposed change in the use of public land is from one park use to another park use and that the City of Fort Worth was not obligated to comply with the notice and hearing and finding provisions of Chapter 26 in connection with the construction of the Diorama and the implementation of the Fort Worth Zoo Master Plan and the Forest Park Master Plan. Appellant's point of error number one is overruled.

■ By his point of error number two, appellant contends, even if the trial court was correct in its interpretation of Chapter 26, holding that it does not apply with respect to a change in the use of public land from one park use to another, that the construction of the Diorama in Forest Park constitutes such a substantial change in park use as not to exempt such construction from the provisions of Chapter 26. Appellant states that there are no Texas cases directly on point regarding the proper uses of parkland and cites us the following foreign cases in support of his position: *Fairhope Single Tax Corp. v. City of Fairhope,* 281 Ala. 576, 206 So.2d 588, 590 (Ala.1968) (holding that a civic center building or recreational building on property dedicated to the City as park property was inconsistent with its use as a park); *Anderson v. Thomas,* 166 La. 512, 117 So. 573, 578 (1928) (holding that a municipal corporation was forbidden to construct an auditorium in a park as such construction would "practically destroy the lot as a park and convert its use into a public square"); and *Williams v. Gallatin,* 229 N.Y. 248,

128 N.E. 121, 123 (1920) (holding that a safety museum was foreign to park purposes).

The appellant apparently does not challenge the trial court's finding that a zoo is a park. The City cites the following cases as identifying a zoo as a park use: *Grover v. City of Manhattan*, 198 Kan. 307, 424 P.2d 256 (Kan.1967); *Township of Southfield v. Main*, 357 Mich. 59, 97 N.W.2d 821 (Mich.1959); *O'Bryan v. City of Louisville*, 382 S.W.2d 386 (Ky.1964); and *City of Cleveland v. Lausche*, 71 Ohio App. 273, 49 N.E.2d 207 (1943).

As mentioned above, the trial court found that the park is as susceptible to use as a park after the expansion of the zoo as it was before, that the park is still capable of being used as a recreational pleasure ground for public health and enjoyment, and that the restaurant/auditorium building within the Diorama, and of which appellant particularly complains, is intended to serve the zoo as a concession stand and as a hall in which educational programs could be presented.

■ We reject appellant's contention that the applicability of Chapter 26 depends upon the degree of change in park use. Because the parkland will still be used for park purposes, and since we have held that a change from one park use to another park use does not trigger the notice and hearing requirements of Chapter 26, we do not find it necessary to address the procedures by which these park changes can be implemented by the City. The City of Fort Worth is a Home Rule City and is authorized to operate and maintain parks, TEX. LOC.GOV'T CODE ANN. sec. 331.001 (Vernon 1988 and Supp.1990), and parks acquired by the City are under the control and management of the City. TEX.LOC. GOV'T CODE ANN. sec. 331.005 (Vernon 1988). As long as the change in park use is from one park use to another, thus not triggering the provisions of Chapter 26, the type of changes, or the degree of change in park use is left to the determination of the City. Point of error number two is overruled.

## CITY'S VIOLATION OF ITS ZONING ORDINANCES

Under points of error numbers three and four, appellant claims that the trial court erred in failing to grant the injunctive and declaratory relief which he sought for the reason (point number three) that the comprehensive zoning ordinance of the City applied to the City in the construction of the Diorama and the implementation of the Forest Park Plan, and for the reason (point number four) that the trial court improperly interpreted and applied such ordinance to the City.

We note that under his pleadings the appellant did not seek any declaratory relief with respect to the alleged violations of the zoning ordinances and only sought injunctive relief.

These points themselves do not direct our attention to the errors about which complaint is made as required by TEX.R. APP.P. 74(d). Appellant combines his argument on both points, and we will discuss separately the various complaints raised under these points, which are scattered throughout his arguments.

■ Firstly, appellant complains that the actions of the City in issuing the building permits for construction of the Diorama were in violation of the City's zoning ordinances, and that such construction was improper and illegal, because the permits approved a nonauthorized facility, the multipurpose restaurant/auditorium, to be built in the "A" One Family Zoning District where the park is located, and in which district a restaurant is not one of the permitted uses under the comprehensive zoning ordinance of the City.

He next complains that the actions of the City in issuing the building permits for the Diorama or other improvements proposed under the Forest Park Plan were in violation of the zoning ordinances, and that the permits were void, because they were issued without providing for parking facilities required by the zoning ordinance.

It is undisputed that the restaurant/auditorium portion of the Diorama is not a permitted use in the "A" One Family Zoned

District in which the park is located; that the comprehensive zoning ordinance of the City requires that certain parking requirements be met before a building permit is issued for the construction of a restaurant; and that the City made no provisions for complying with such parking requirements before issuing the building permits. The City neither sought nor obtained special exceptions or permits for variances from its Board of Adjustment with respect to the construction and maintenance of the Diorama, including the restaurant/auditorium, as a nonconforming use in the "A" One Family District or respecting its decision not to provide for parking facilities otherwise required for a restaurant. Permissible uses in the "A" One Family District include parks, playgrounds, community centers, governmental facilities, and accessory uses and buildings. Section 1 of the comprehensive zoning ordinance defines accessory use as a use which is clearly incidental to the use of the principal building or the main use of the property.

The appellant claims that the City itself is bound by its own zoning ordinances. *City of Pharr v. Tippitt*, 616 S.W.2d 173 (Tex.1981). The City does not deny that it is bound by its own zoning ordinances, but maintains that its issuance of the building permits complained of by appellant were not in violation of the zoning ordinances. It argues that the Diorama, including the family center and restaurant/auditorium, is a permissible use in the "A" One Family District as a park use or as a governmental facility use, and as an accessory use to the park and governmental facility.

The City also claims that it was not obligated to provide parking facilities as otherwise required by the zoning ordinance because the restaurant/auditorium constitutes accessory uses to the park, the zoo, and related governmental facilities, and because the ordinance does not require off-street parking for parks, zoos, and governmental facilities.

The City's position is supported by the following findings and conclusions filed by the trial court:

It [restaurant building] is intended to serve the zoo as a concession stand and as a hall in which educational programs could be presented. It has restrooms, a kitchen, a stage, a projection booth and a hall of a size sufficient to seat large numbers for either meals or lectures. There is also a patio eating area just outside of the concession stand. The building (variously called "The Grey Mule Saloon," "The Longbranch Saloon" and the family center) is located in an exhibit area at the south end of the zoo....

....

... The City contends that this is a permissible use as a park or governmental facility use and as an accessory use to either of those permissible uses and therefore the zoning ordinance is not compromised. The City is correct....

... A park is a permissible use [in "A" One Family District] as are its accessory buildings. A zoo is a park. Therefore the zoo, which is also a government facility, is a use proper to the "A" district. No permit, notice or hearing is required for its expansion or improvement under the zoning ordinance, nor do the parking provisions apply since the restaurant is simply "accessory" to the permissible dominant use, the park cum zoo.

We agree with the conclusions reached by the trial court, and we hold that the actions of the City in issuing the building permits, which allowed the construction of the Diorama and other facilities in the "A" One Family District, and without requiring parking facilities for the restaurant/auditorium, were not in violation of the comprehensive zoning ordinances of the City and that the permits were not void as asserted by appellant. The Diorama and the other construction relating to the expansion of the zoo under the Forest Park Plan are permissible accessory uses to the park use, including the zoo, and to the governmental facilities of the City. *See 795 Fifth Ave. Corp. v. City of New York*, 40 Misc.2d 183, 242 N.Y.S.2d 961 (N.Y.Sup.Ct.1963). The appellant has not shown that the actions of the City, in constructing the Diorama and other improvements as accessory uses to

the park, were arbitrary, capricious, or unreasonable. *City of Lubbock v. Austin,* 628 S.W.2d 49, 50 (Tex.1982).

The appellant cites *City of Amarillo v. Stapf,* 129 Tex. 81, 101 S.W.2d 229 (1937) to support his claim that the building permits were void because they were issued in violation of the City zoning ordinance. That case is distinguishable, and is not controlling here because we have held that the building permits in question do not violate the zoning ordinances of the City of Fort Worth.

■ Appellant further attacks the building permits issued by the City as being in violation of the zoning ordinance due to the failure of the City to prepare and file plats in connection with such permits. He claims that a plat was required under section 22 of the comprehensive zoning ordinance. He further claims that the fencing off of the area inside the park, where the Diorama and other facilities are to be constructed, constituted a subdivision or partition of this property which required that the same be platted under the provisions of TEX.LOC. GOV'T CODE ANN. sec. 212.004 (Vernon Supp.1990). We do not reach this point and find that the same was not raised by the appellant's pleadings and that it was not preserved as required by TEX.R.APP.P. 52. The appellant asserts in his brief that the trial court erred in its finding that the City was under no obligation to comply with the platting requirements. The record does not reflect any such finding on behalf of the trial court and neither does the record reflect that the appellant requested the court to file findings of fact or conclusions of law to that effect.

Even if this point had been preserved by appellant, it is without merit. The acts of the City in enlarging the zoo, and including the enlarged area within the zoo fence, do not constitute a partition or subdivision of the park area so as to require platting under either the comprehensive zoning ordinances of the City or under TEX.LOC. GOV'T CODE ANN. sec. 212.004.

Appellant's points of error numbers three and four are overruled.

## ATTORNEYS' FEES

Under point of error number five appellant asks this court to reverse the portion of the judgment entered by the trial court denying appellant's recovery of attorney's fees. The trial court found that the reasonable and necessary attorney's fees for the appellant were $54,956.05 for trial, $10,000 for services on appeal, $5,000 to prepare or respond to a petition for writ of error, and $7,500 for services in the supreme court if such petition is granted. As stated above, the trial court refused to grant appellant judgment against the City for these attorney's fees.

The appellant is correct in stating that under the Declaratory Judgment Act, TEX. CIV.PRAC. & REM.CODE ANN. sec. 37.-009 (Vernon 1986), the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. He is also correct in stating that the award of attorney's fees under the Act is not limited to the prevailing party. *District Judges v. Commissioner's Court,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985); *Groves,* 746 S.W.2d at 918–19.

He claims that he is entitled to attorney's fees because he prevailed on a portion of the lawsuit, that being the trial court's denial of the City's request for a declaratory judgment to the effect that Chapter 26 does not apply when the municipality approves any program or project which involves the use of its own public lands. The declaratory relief actually granted to the City was more narrow in scope than that sought by the City, in that Chapter 26 was held not to apply with respect to the change of a park use to another park use. We do not find that the refusal of the trial court to award appellant attorney's fees on this contention was an abuse of discretion,

where, as here, the appellant did not prevail on any issues on which he sought relief in the lawsuit and where the portion of the lawsuit on which the appellant claims he prevailed had no bearing on and was not reflected in the results and judgment rendered by the trial court.

■ Appellant also urges that the equitable doctrines of "clean hands" and "balancing the equities" should be utilized by us to hold that the trial court abused its discretion in failing to award attorney's fees to him, citing *La Cour Du Roi, Inc. v. Montgomery County*, 698 S.W.2d 178 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). He claims that the City exhibited bad faith in handling this matter in that it failed to make any effort to resolve the dispute and that the City refused to allow effective citizen input into the formation of the Diorama, thereby forcing and compelling appellant to file this lawsuit in order to protect his rights and seek an opportunity to be heard on the issues.

■ Our search of the record fails to disclose that the actions of the City, in defending this suit or in prosecuting its cross-action for declaratory relief, were undertaken or conducted in bad faith so as to reflect abuse of discretion on behalf of the trial court in refusing appellant's request for attorney's fees. Neither does the record reflect that the trial court abused his discretion in failing to award him attorney's fees as a matter of equity due to his efforts to protect his rights against the alleged unlawful actions of the City. Having found no abuse of discretion on behalf of the trial court in denying appellant's request for attorney's fees, point of error number five is overruled.

By its cross-point of error number three, the City claims the trial court erred in making a finding of the amount of appellant's reasonable and necessary attorney's fees as contained in additional findings of fact signed by the trial court on August 8, 1988, for the reason that the request of appellant for such additional findings was untimely as having been delivered to the trial court more than five days after the trial court filed its original findings of fact

and conclusions of law. TEX.R.CIV.P. 298. We have overruled appellant's point of error number five and have refused to reverse the judgment of the trial court denying him recovery of attorney's fees, and accordingly it is not necessary that we reach the City's cross-point of error number three.

The judgment of the trial court is affirmed.