Bradley J. Hurd, as a Taxpayer of the County of Erie, Appellant, *v.* Erie County et al., Respondents.

Fourth Department, May 14, 1970.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Alexander C. Cordes* and *Paul B. Zuydhoek* of counsel), for appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak* and *Frederick A. Muller* of counsel), for Kenford Company Inc., and another, respondents.

*Robert E. Casey, Jr., County Attorney (William Straub* of counsel), for Erie County and others, respondents.

GABRIELLI, J.  From an adverse determination of the Supreme Court at Special Term dismissing his complaint for a failure to state a case of action and a denial of his application for a preliminary injunction, plaintiff appeals and seeks to have declared void a certain contractual arrangement between the defendants herein.

This taxpayer's action was instituted against the County of Erie, its County Executive and two private corporations, Kenford Company, Inc. (Kenford) and The Dome Stadium, Inc. (Dome) wherein plaintiff seeks rescission of an agreement between the county, Kenford and Dome to the extent that the agreement provides for a management contract between the county and Dome under which Dome would operate a stadium similar to the well-known Houston Astrodome, upon the happening of certain contingencies.  The plaintiff also seeks a permanent injunction restraining the county from entering into any contract for management of the domed stadium until it has complied with the competitive bidding provision of the General Municipal Law (§ 103, subd. 1).

After considerable public discussion the Erie County Legislature submitted a home rule request to the State Legislature which resulted in the enactment of chapter 252 of the Laws of 1968 and which provided insofar as here applicable, as follows:

" Section 1. Notwithstanding the provisions of any other law, general, special, or local, the county of Erie * * * is hereby authorized and empowered from time to time to enter into contracts, leases, or rental agreements with, or grant * * * authorizations, to any person or persons, upon such terms and conditions, for such consideration and for such term of duration as may be agreed upon by the county and such person or persons, whereby * * * such person or persons are granted the right, to use, occupy, or carry on activities * * * Prior to or after the expiration or termination of the term of duration of any contracts * * * the county of Erie * * * **may**

\* \* \* enter into amended, supplemental, new, additional, or further contracts, leases, or rental agreements with \* \* \* the same or any other person or persons or any purpose or purposes referred to herein.

"§ 2. The person or persons entering into any contract \* \* \* or other authorization referred to in section one hereof with the county of Erie hereunder, may be granted the right to use, occupy, or carry on activities in the whole or any part of such stadium, site, parking areas, and other facilities \* \* \* [for] \* \* \* recreation, entertainment \* \* \* education, enlightenment, cultural enrichment \* \* \* athletic events \* \* \*. It is hereby declared that all of the purposes referred to in this section \* \* \* are \* \* \* public purposes for which county moneys may be appropriated and expended.

"§ 3. The construction \* \* \* is hereby declared to be a specific object or purpose for which indebtedness may be contracted and serial bonds \* \* \* of the county of Erie may be issued."

Thereafter, the County Executive was authorized by the Erie County Legislature to execute a contract with Kenford which provided that Kenford would donate to the county 178 acres of land on which, together with other lands to be acquired by the county, the county would construct a domed stadium. The contract further provided that Kenford (through its nominee, Dome) would enter into negotiations with the county for a mutually acceptable 40-year lease of the stadium under which the county would be guaranteed at least $63.75 million dollars in revenues. If, however, the lease negotiations failed to produce agreement within three months after receipt of preliminary plans and cost estimates, the county would enter into a 20-year management contract with Kenford (again through Dome, its nominee) under which the county would operate the stadium, with Kenford providing promotional and management services in return for a fee to be agreed upon. The contract was executed on August 8, 1969 by the county, Kenford and Dome. The 20-year management provision is, of course, as yet unexecuted. The resolution adopted by the County Legislature and the contract under consideration, both stipulate that one Roy M. Hofheinz and one Edward V. Cottrell are to be the principal stockholders of Kenford and Dome and Hofheinz is to be the chief executive officer of Dome, the management corporation. There is no serious dispute as to the correctness of the allegations in defendants' moving papers that Hofheinz is possessed of unique talents and abilities in that he, " is the only man who

has ever had the full responsibility for management of a domed stadium facility such as the County of Erie will be constructing.'' The proposed management contract requires Dome to provide '' expert top management personnel with at least five (5) years experience in stadium management and operation for the purpose of supervising and directing the Corporation's obligations ''.

Although plaintiff questions the wisdom of the actions of the County Legislature, he quite properly limits his attack to what he contends is the county's lack of power to enter into the contract in question without competitive bidding (cf. *Gaynor* v. *Rockefeller*, 15 N Y 2d 120; *Kaskel* v. *Impellitteri*, 306 N. Y. 73; *Campbell* v. *City of New York*, 244 N. Y. 317). We are, therefore, called upon to determine only whether the contract in question is subject to the provisions of subdivision 1 of section 103 of the General Municipal Law which provides in pertinent part that: '' Except as otherwise expressly provided by an act of the legislature * * * all contracts for public work involving an expenditure of more than twenty-five hundred dollars * * * shall be awarded * * * to the lowest responsible bidder * * * after advertisement for sealed bids in the manner provided by this section ''.

The court below determined that the contract in question provided for the rendering of specialized management and promotional skills thereby bringing it within an exception to the provisions of subdivision 1 of section 103, and we agree. Plaintiff, in this court and in the court below, concedes the existence of such an exception but argues that it does not apply here because (1) the services called for have never been exempted from competitive bidding, (2) the contract is not with one or more experienced managers, but with a corporation, and (3) the exception was intended to apply to short term professional contracts and not to a contract for such a long term.

The exception to the general competitive bidding requirement in contracts for services requiring special skill or training was first recognized more than a century ago in *People ex rel. Smith* v. *Flagg* (17 N. Y. 584, 587) in which the court stated: '' It would be an unreasonable and mischievous construction of the [competitive bidding] statute, to apply it to services which require in their proper performance scientific knowledge or professional skill.''

That case involved a contract for the preparation of copies of maps but the courts of this and other States have found numerous other exceptions, examples of which are: court stenographers, attorneys, auditors, automobile advertisers, engineers and archi-

tects (10 McQuillin, Municipal Corporations, § 29.35) ; public liability insurance (*Matter of Lynd* v. *Heffernan*, 286 App. Div. 597, mot. for lv. to app. granted 1 N Y 2d 641, mot. to withdraw app. granted 1 N Y 2d 919) ; and preparation of plans for a proposed armory (*Horgan & Slattery* v. *City of New York*, 114 App. Div. 555). In addition, the State Comptroller has recognized several other similar exceptions in his opinions to local governments, viz: publicity services (24 Op. St. Comp., 1968, p. 437) ; investment management services (17 Op. St. Comp., 1961, p. 279) ; laboratory examinations (16 Op. St. Comp., 1960, p. 361) ; water surveys (15 Op. St. Comp., 1959, p. 373) ; general ambulance services (13 Op. St. Comp., 1957, p. 315) ; and services of a certified public accountant (9 Op. St. Comp., 1953, p. 403). (See, also, Ann. 15 ALR 3d 733, 735, § 2.)

It appears from the record that the county desired to take advantage of the experience and skill acquired by Hofheinz during his tenure as operator of the Houston Astrodome. Thus, the resolution adopted by the County Legislature on June 18, 1969 which authorized the prime contract between the county and Kenford provides that: " Kenford will have Judge Roy M. Hofheinz and Edward H. Cottrell as principal stockholders. Judge Hofheinz will be Chief Executive Officer."

In addition and to insure the presence of Hofheinz in the management corporation, if that agreement is to be executed, the prime contract between the county and Kenford also provides that: " The Dome Stadium, Inc. is a corporation duly organized and existing under the laws of the State of New York for the purpose of operating the domed stadium facilities. The Corporation has as its principal stockholders Judge Roy M. Hofheinz and Edward H. Cottrell. Judge Roy M. Hofheinz is the Chief Executive Officer of the Corporation."

It is important to note that the contemplated stadium would be only the second domed stadium in existence; and we are permitted to indulge in the conclusion that the potential for revenue if skilled promotion and management are used, is enormous. Beyond that, however, there is the basic requirement that large revenues must be generated merely to recover the investment undertaken by the county, estimated at fifty million dollars. Obviously, it will require the diligent efforts of skilled professionals if this venture is to have any chance to be self-sustaining. It can be readily seen that the management contract is, therefore, akin to a planning contract or a contract with an engineer, rather than a general construction contract. There is no serious dispute that the pool from which these professionals can be drawn is quite small, since there are so few

ventures of this magnitude, domed or not, which can serve as training grounds for the required expertise.

We hold, therefore, that the management contract called for in the event of a failure of lease negotiations is one which falls within the exception created to the provisions contained in subdivision 1 of section 103 of the General Municipal Law and does not require competitive bidding. The fact that the contract is for a 20-year period rather than a short term does not change our conclusion. The length of the term is mandated by the nature of the facility to be operated under the contract, and the services which will be required to make the venture successful.

There remains the additional point raised by appellant in which he contends that the exception does not apply because the contract is not with Hofheinz individually, but with a corporation. It is claimed that if Hofheinz were to be merely an employee of the corporation, the decision of the length of time his talents would be applied would be completely out of the influence of the county. Appellant also argues that the county cannot take advantage of the special skills exception if the contracting party is a corporation, relying on *Johnson-Olmstead Realty Co.* v. *City and County of Denver* (89 Col. 250). We are unable to construe the rule announced therein as controlling because of the completely different factual situation presented in the case at bar. Here, the individual relied upon by the county is not just an employee of the corporation but he is one of the two principal stockholders. His connection with the contract is a necessary ingredient and vital component thereof, and is obviously much more substantial than that found in *Johnson-Olmstead Realty Co.* v. *City and County of Denver* (*supra*). In addition, it cannot be said that the special skills exception does not apply merely because the contracting party was a corporation and not an individual (cf. *Horgan & Slattery* v. *City of New York*, 114 App. Div. 555, 559, *supra*). That case involved a contract with a corporation of architects for the preparation of plans and specifications for the construction of an armory. The court applied the special skills exception to the competitive bidding rules even though plaintiff was a *corporation*.

Finally, we agree that the enabling act, chapter 252 of the Laws of 1968, contains a strong and compelling inference that the competitive bidding provisions were not meant to apply. The county was given power to contract with persons to manage and promote the stadium upon such terms and conditions and for such duration " *as may be agreed upon by the county*

*and such person or persons*'' (emphasis supplied). This language does not contemplate the solicitation of bids as to terms and conditions.

Since we have determined that Special Term was correct in dismissing the complaint, appellant's request for injunctive relief has been rendered academic.

The order and judgment should be affirmed, without costs.

GOLDMAN, P. J., WITMER, BASTOW and HENRY, JJ., concur.

Judgment and order unanimously affirmed without costs.