CITY OF KENAI, an Alaska municipal corporation, Appellant,

v.

FRIENDS OF the RECREATION CENTER, INC., an Alaska corporation, Mark Necessary, Anita Necessary, and Clifford D. Massie, Individually, Appellees.

No. S–11506.

Supreme Court of Alaska.

Feb. 17, 2006.

12. *See id.*

Cary R. Graves, City Attorney, Kenai, for Appellant.

John E. Havelock, John E. Havelock Attorney at Law, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Was it error to award full reasonable attorney's fees to public interest litigants who sued the City of Kenai? They claimed that awarding a contract to manage the city's recreation center without competitive bidding violated the city's code. The superior court entered a preliminary injunction preventing the city from using public funds to pay the manager, but later dismissed the suit as moot after the city amended the pertinent ordinance and recontracted with the manager. Because it was not an abuse of discretion to enter the preliminary injunction, we conclude that the court did not err in finding that the plaintiffs were the prevailing parties. We also conclude that the dismissal for mootness did not deprive them of that status, and that the superior court was not obliged to apportion the attorney's fees award.

## II. FACTS AND PROCEEDINGS

In early 2003 the City of Kenai was examining options for adjusting its budget; the options included budget cuts. City employees had operated the city's Kenai Recreation Center since it opened in the 1980s, but it appeared that the city could realize net savings of $110,000 by contracting for private management of the center. The city therefore solicited from the Boys & Girls Club of the Kenai Peninsula ("the club") a proposal for a "Partnering Agreement," a contract under which the club would manage the center. The city did not solicit competitive bids for the proposed contract, and the city manager discouraged another interested private party from bidding.

Over the next several months the Kenai Parks & Recreation Advisory Commission—which makes recommendations to the city council regarding parks and recreation facilities in Kenai—and the city council met to discuss a partnering agreement with the club. The city council approved a contract with the club on May 21, 2003. Friends of the Recreation Center, Inc. and three individuals, Mark and Anita Necessary and Clifford Massie, (collectively, "Friends") sued the city on June 26, contending in part that the city had not conducted competitive bidding for the contract as required by city ordinance.[1] Friends asked the superior court for a temporary restraining order and a preliminary injunction preventing the city from honoring its contract with the club. Friends also asked for a judgment declaring that the contract was void for, among other reasons, violating the competitive bidding requirement of KMC 7.15.040.[2]

The club began operating the center on July 1, 2003. On July 10 the superior court

---

[1]. Kenai Municipal Code (KMC) 7.15.040(a) requires the city, before awarding a contract for services, to solicit bids from at least three potential contractors, if possible, "and/or publish notice of the proposed [contract] in a newspaper of general circulation" within the city. KMC 7.15.040(f) requires the city to award the contract to the "lowest responsible bidder."

KMC 7.15.050 lists exceptions to the competitive bidding requirement of KMC 7.15.040. When the city first contracted with the club and Friends filed suit, KMC 7.15.050(5) provided that "[t]he following may be purchased without giving an opportunity for competitive bidding: . . . (5) Contractual services of a professional nature, such as engineering, architectural, and medical services." We refer to this as the "pre-amendment" version of KMC 7.15.050(5). While Friends's suit was pending, the city council

amended KMC 7.15.050(5) to include "facilities management." *See infra* note 4 and accompanying text.

[2]. Friends also alleged that (1) the contract was illegal because the club did not have an Alaska business license; (2) notice of the city council meetings at which the potential contract was discussed was inadequate, in violation of Alaska's Open Meetings Act (AS 44.62.310); (3) residents were not allowed to participate or comment at a city council meeting, in violation of the Open Meetings Act; and (4) the Kenai City Charter violates the constitutional right to referendum by allowing for only a one-month signature-gathering period and by limiting the right "to City Council ordinances only," so that the contract with the club could not be voided by referendum. The superior court did not base the preliminary

rejected the city's contention that, because KMC 7.15.050(5) as it then read exempted a service "of a professional nature," the contract was exempt from KMC 7.15.040's competitive bidding requirement. The court then issued a preliminary injunction preventing the city from paying the club under the contract.[3]

On September 3, 2003 the city council amended KMC 7.15.050(5) to exempt contracts for "facilities management" services from KMC 7.15.040's competitive bidding requirement.[4] The city then solicited bids for private management of the center, assigned the club's bid the highest score, and replaced the club's first contract with a second contract.

On May 7, 2004 the superior court granted the parties' joint motion to dismiss Friends's suit as moot. Then, over the city's objection, it found that Friends was a public interest litigant and the prevailing party, and awarded Friends its full reasonable attorney's fees.

The city appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ We review for abuse of discretion the superior court's determination of prevailing party status for purposes of awarding attorney's fees.[5] We also review the issuance of preliminary injunctions for abuse of discretion.[6] We will find an abuse of discretion "only 'when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' "[7] But we review de novo the superior court's legal determinations in issuing the preliminary injunction.[8] We will approve the apportionment of a prevailing public interest litigant's attorney's fees award "only in exceptional circumstances."[9]

### B. Friends Is Entitled to Full Reasonable Attorney's Fees as a Prevailing Party Public Interest Litigant.

■■■ "Under Alaska law, the prevailing party is the one who successfully prosecuted or defended the action and prevailed on the main issue."[10] The prevailing party in civil litigation is normally entitled to recover partial attorney's fees under Alaska Civil Rule 82. But if the prevailing party is a public interest litigant, it is normally entitled to full reasonable attorney's fees.[11] Because the city does not argue on appeal that Friends is not a public interest litigant, Friends is entitled

injunction on any of these claims. We discuss in Part III.C the city's contention that because Friends did not prevail on these claims, any attorney's fees awarded to Friends should be apportioned by issue.

3. The superior court later allowed the release of city funds to compensate the club for services rendered before the preliminary injunction was issued.

4. KMC 7.15.050 now reads:

The following may be purchased without giving an opportunity for competitive bidding: ... (5) Professional services. Professional services means those advisory, consulting, architectural, management, engineering, research or development services that involve the exercise of discretion and independent judgment together with an advanced or specialized knowledge, expertise or training gained by formal studies or experience. Examples of professional services include ... facilities management....

We refer to this version of KMC 7.15.050(5) as the "post-amendment" version.

5. *Fernandes v. Portwine*, 56 P.3d 1, 5 (Alaska 2002).

6. *State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 978 (Alaska 2005).

7. *DeSalvo v. Bryant*, 42 P.3d 525, 528 (Alaska 2002) (quoting *Arbelovsky v. Ebasco Servs., Inc.*, 922 P.2d 225, 227 (Alaska 1996)).

8. *See People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 60 Cal.Rptr.2d 277, 929 P.2d 596, 626 (1997) ("Of course, questions underlying the preliminary injunction are reviewed under the appropriate standard of review. Thus, for example ... issues of pure law are subject to independent review.").

9. *Dansereau v. Ulmer*, 955 P.2d 916, 920 (Alaska 1998).

10. *Matanuska Elec. Ass'n, Inc. v. Rewire the Bd.*, 36 P.3d 685, 690 (Alaska 2001).

11. *Dansereau*, 955 P.2d at 918.

AS 09.60.010 was amended in 2003 to prohibit the award of full reasonable attorney's fees to prevailing public interest litigants except in cases "concerning the establishment, protection, or enforcement" of a constitutional right. AS

to full reasonable attorney's fees if the superior court did not err in finding it to be the prevailing party.

 After the superior court issued the preliminary injunction, the city rendered the merits of the competitive bidding dispute moot by amending KMC 7.15.050(5) to exempt "facilities management" from KMC 7.15.040's competitive bidding requirement and by entering into a new contract with the club. We will decide the merits of otherwise-moot cases in order to determine the prevailing party for purposes of attorney's fee awards.[12] We therefore focus on whether Friends successfully prosecuted the case and prevailed on the main issue in obtaining the preliminary injunction; this requires us to consider whether the superior court abused its discretion in issuing the preliminary injunction.

### 1. The superior court did not abuse its discretion in issuing the preliminary injunction.

We have recently described what a plaintiff must show to obtain a preliminary injunction:

> The showing required to obtain a preliminary injunction depends on the nature of the threatened injury. If the plaintiff faces the danger of irreparable harm and if the opposing party is adequately protected, then we apply a balance of hardships approach in which the plaintiff must raise serious and substantial questions going to the merits of the case; that is, the issues raised cannot be frivolous or obviously without merit. If, however, the plaintiff's threatened harm is less than irreparable or if the opposing party cannot be adequately protected, then we demand of the plaintiff the heightened standard of a clear showing of probable success on the merits.[13]

The superior court found that Friends faced irreparable harm, that the city was adequately protected, and that Friends "demonstrated a substantial likelihood of success on the merits of [its] claim."

### a. The issues whether Friends was faced with irreparable harm and whether the city was adequately protected are moot.

Although the city argues that the superior court did not make adequate findings that Friends was faced with irreparable harm,[14] it does not contend that Friends was *not* faced with irreparable harm. If we were reviewing the issuance of a preliminary injunction in a *pending* case, and concluded that the findings were inadequate, we would remand to the superior court for additional findings.[15] But remanding for additional findings in this case would be a needless exercise, given that the ultimate issue in this attorney's fees ap-

09.60.010(b), (c). AS 09.60.010(b) applies "to all civil actions and appeals filed on or after" the Act's effective date of September 11, 2003. Ch. 86, § 4, SLA 2003.

The city has not argued that AS 09.60.010(b) has any bearing on the attorney's fee award in this case, and the parties have not briefed the issue. We express no view as to AS 09.60.010(b)'s applicability to this case, but note that legislative history may inform the interpretation of the term "appeal" in ch. 86, § 4, SLA 2003. *See* Judiciary Committee Substitute for House Bill (C.S.H.B.(Jud)) 145, 23rd Leg., 1st Sess. (2003); House Judiciary Committee Minutes, May 7, 2003 (testimony of Robert B. Briggs, staff attorney for the Disability Law Center of Alaska, Inc., commenting on an April 21, 2003 letter by an assistant attorney general explaining and interpreting H.B. 145); *see also* AS 22.10.020(a), (d). To the extent there is a contention that Friends is or is not entitled to full reasonable attorney's fees as a prevailing public interest litigant, the parties will have an opportunity to address the applicability · of AS 09.60.010(b) in the context of a motion for attorney's fees under Alaska Appellate Rule 508.

**12.** *See Bruner v. Petersen,* 944 P.2d 43, 47 n. 4 (Alaska 1997) (citing *LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 651 P.2d 839, 840 n. 1 (Alaska 1982)).

**13.** *State, Div. of Elections · v. Metcalfe,* 110 P.3d 976, 978 (Alaska 2005) (internal quotation marks and citations omitted).

**14.** *See* Alaska R. Civ. P. 52(a) ("[I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law constitute the grounds of its action."); Alaska R. Civ. P. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; [and] shall be specific in terms . . . .").

**15.** *See State, Dep't of Fish & Game v. Pinnell,* 461 P.2d 429, 432 & n. 8 (Alaska 1969).

peal is whether Friends was the prevailing party. The dispute that resulted in the injunction in this case is moot. Because the city does not argue that Friends was not faced with irreparable harm, we decline to consider whether the superior court abused its discretion in finding the threat of irreparable harm here.

The superior court also found that "[t]he security posted by [Friends] under the circumstances is sufficient" to protect the city. The city argues that it was not adequately protected and that the superior court's finding was clearly erroneous.

■ When a party requesting a preliminary injunction has shown probable success on the merits, a preliminary injunction may be issued even if the injury from the preliminary injunction "may not be adequately indemnified by a bond."[16] The superior court found that Friends had demonstrated a "substantial likelihood of success" on the merits. Because the court thought it was more likely than not that Friends would prevail on the merits of its claim, we interpret the court's finding of "substantial likelihood of success on the merits" as a finding of "probable success on the merits."[17] If the superior court did not abuse its discretion in concluding that Friends had demonstrated probable success on the merits, any possible error in its finding that the city was adequately protected is harmless. We therefore turn to whether Friends demonstrated probable success on the merits.

### b. Friends demonstrated probable success on the merits.

■ There is no factual dispute on appeal that the city did not conduct competitive bidding before awarding the original management contract to the club. Whether Friends demonstrated probable success on

the merits therefore turns on the legal question whether the pre-amendment version of KMC 7.15.050(5) exempted management of the center from KMC 7.15.040's competitive bidding requirement. Before September 3, 2003 KMC 7.15.050 provided: "The following may be purchased without giving an opportunity for competitive bidding: ... (5) Contractual services of a professional nature, such as engineering, architectural, and medical services."

### i. The superior court was not required to defer to the city's interpretation of the pre-amendment version of KMC 7.15.050(5).

■ The city, citing *Laborers Local No. 942 v. Lampkin,*[18] contends that the "reasonable basis" test applies to the city's interpretation of its procurement code. In *Lampkin* we held that a city's interpretation of its own procurement code will be upheld if there is a reasonable basis for the interpretation.[19] Under the rational basis test, we will uphold a governmental unit's decision if it "is supported by the facts and has a reasonable basis in law, even if we may not agree with the [unit's] ultimate determination."[20] The city argues that because it had a reasonable basis to conclude that the term "professional services" included management of the center, the superior court abused its discretion by issuing the preliminary injunction.

But we apply the reasonable basis standard of review to a municipality's interpretation of its own ordinances only "when this interpretation implicates complex matters or the formulation of fundamental policy."[21]

*Lampkin* concerned a Fairbanks North Star Borough requirement that the successful bidder for a school renovation project enter into a previously negotiated Project

---

16. *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough,* 850 P.2d 636, 639 (Alaska 1993).

17. "Likelihood" is defined as "probability" and "appearance of probable success." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (1966).

18. *Laborers Local No. 942 v. Lampkin,* 956 P.2d 422 (Alaska 1998).

19. *Id.* at 435.

20. *Gunderson v. Univ. of Alaska, Fairbanks,* 922 P.2d 229, 233 (Alaska 1996) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987)).

21. *Lampkin,* 956 P.2d at 432 n. 11.

Labor Agreement (PLA).[22] We noted that the construction "project unquestionably presented special challenges," and that the PLA would facilitate necessary "flexible scheduling" and eliminate "the potential for strikes or other labor difficulties."[23] We held the borough had a reasonable basis to conclude that the PLA would allow the borough to satisfy its minimum needs, its procurement code's policy of "maximum practicable competition," and the procurement code's provisions dealing with "sole source procurement."[24]

The legal question in this case is far less complex, involving only the meaning of "services of a professional nature." Nor is there any indication that defining that phrase implicates "the formulation of fundamental policy." We therefore conclude that although the superior court held that the city's interpretation failed even the reasonable basis test, the court could have interpreted pre-amendment KMC 7.15.050(5) using its independent judgment. Because we review de novo the superior court's legal determinations in issuing the preliminary injunction,[25] we review the meaning of pre-amendment KMC 7.15.050(5) using our independent judgment. We then review for abuse of discretion the superior court's determination of probability of success on the merits and its ultimate decision to issue the preliminary injunction.

**ii. The superior court did not err in holding that "services of a professional nature" in the pre-amendment version of KMC 7.15.050(5) did not include management of the center.**

■■■ The superior court relied on what it characterized as the "clear language" of the ordinance in determining that management of the center was not a service of a professional nature. The city cites several cases from other jurisdictions holding that in the context of similar procurement codes, management of various facilities was professional in nature.[26] At least some of these cases are easily distinguishable.[27] Moreover, numerous cases from other jurisdictions hold that management of facilities is not professional in nature and requires competitive bidding.[28] Opinions from other jurisdictions interpreting similar statutes can be persuasive,[29] but we turn first to our own methods of statutory interpretation.

■■■ Interpretation of a statute begins

---

22. *Id.* at 427–28.

23. *Id.* at 435.

24. *Id.* at 432, 435–36.

25. *See People ex rel. Gallo v. Acuna,* 14 Cal.4th 1090, 60 Cal.Rptr.2d 277, 929 P.2d 596, 626 (1997).

26. *See Hurd v. Erie County,* 34 A.D.2d 289, 292, 310 N.Y.S.2d 953 (N.Y.App.Div.1970) (professional football stadium); *City of Cleveland v. Lausche,* 71 Ohio App. 273, 49 N.E.2d 207, 211 (1943) (zoological garden); *Lieberman Org. v. City of Phila.,* 141 Pa.Cmwlth. 9, 595 A.2d 638, 640–41 (1990) (homeless shelter).

27. The facilities in Erie and Cleveland were considerably larger and more complex than the facility in Kenai, and they required far more expertise to manage.

28. *See, e.g., City of Inglewood–L.A. County Civic Ctr. Auth. v. Superior Court of L.A. County,* 7 Cal.3d 861, 103 Cal.Rptr. 689, 692, 500 P.2d 601 (1972) (rejecting argument that management

contract for public construction project is analogous to contract for engineering and architectural services); *Glatstein v. City of Miami,* 399 So.2d 1005, 1009 (Fla.App.1981) (holding that contract for management of theme park was not professional service); *Communicare, Inc. v. Woody County Bd. of Comm'rs,* 161 Ohio App.3d 84, 829 N.E.2d 706, 712–15 (2005) (holding that contract for management services for operation of nursing home was not professional service enumerated by statute). These facilities seem more analogous to the Kenai facility than those found in Erie, Cleveland, or Philadelphia.

29. *See Nicholson v. Sorensen,* 517 P.2d 766, 770 n. 9 (Alaska 1973) ("[A] construction of a similar statute by the highest court of another state rendered after adoption of the statute by Alaska may be persuasive," but "a statute is presumed to have been adopted with the interpretation that had been placed upon it prior to its Alaska enactment by the highest court of the state from which it was taken."). The city does not suggest that the pre-amendment version of KMC 7.15.050(5) was "taken" from any of the statutes interpreted in the cases cited in *supra* note 26. We therefore accord them no extraordinary persuasive force.

with its text.[30] We apply the same rules of interpretation to municipal ordinances.[31] In interpreting statutes, we "have adopted a sliding scale approach," under which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[32] Black's Law Dictionary defines "professional" as "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency."[33] Webster's Third International Dictionary provides a similar definition.[34] "[S]ervices of a professional nature" are therefore commonly understood to be services that are rendered by a member of the learned professions or that require a high level of training and proficiency.

■ The illustrative clause—"such as engineering, architectural, and medical services"—that follows "services of a professional nature" provides textual support for this interpretation.[35] "Pursuant to the doctrine of *ejusdem generis*, a general term, when followed by specific terms, will be interpreted in light of the characteristics of the specific terms, absent clear indication to the contrary."[36] Before its 2003 amendment, KMC 7.15.050(5) listed only "engineering, architectural, and medical services" as examples of "services of a professional nature." These specific examples all require extensive education, training, and proficiency. Most professions encompassed by these examples require licensing in Alaska.[37] There has been no contention, much less any evidence, that successful management of the city's recreation center requires education, training, or proficiency equivalent to that required of engineers, architects, and providers of medical services.

In light of the plain meaning of "services of a professional nature" and the specific examples listed in pre-amendment KMC 7.15.050(5), we conclude that the phrase "services of a professional nature" does not in-

---

**30.** *Bartley v. State, Dep't of Admin., Teachers Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005).

**31.** *See Marlow v. Municipality of Anchorage*, 889 P.2d 599, 602 (Alaska 1995) (applying sliding scale approach to interpretation of ordinance).

**32.** *Gov't Employees Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279, 284 (Alaska 2005).

**33.** BLACK'S LAW DICTIONARY 1226 (7th ed. 1999). AS 01.10.040(a) requires that

> [w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.

*See also Graham–Gonzalez*, 107 P.3d at 284 ("In assessing statutory language, unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage.") (internal quotations omitted).

The city argues that it has interpreted "services of a professional nature" to include facilities management in the past. But the city does not point to a peculiar legislative definition. Moreover, we do not regard two other facilities management contracts that the city claims it made without competitive bidding as imbuing the term "professional" with a peculiar meaning. We therefore look to the term's common and approved usage.

**34.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1811 (1966) (defining "professional," when used as an adjective, as describing one "engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency").

**35.** The term "such" means "[o]f this or that kind." BLACK'S LAW DICTIONARY 1446 (7th ed.1999). "Under Alaska law, words and phrases in statutes generally are to be construed according to their common and approved usage." *Human Res. Co. v. Alaska Comm'n on Post Secondary Educ., State of Alaska*, 946 P.2d 441, 444 (Alaska 1997). The use of "such as" in pre-amendment KMC 7.15.050(5) therefore indicates that the list of "services of a professional nature" is meant to be illustrative rather than exclusive.

**36.** *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1141 (Alaska 2000) (citing *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1046 (Alaska 1996)); *see also Cable v. Shefchik*, 985 P.2d 474, 480 (Alaska 1999) (explaining that under doctrine of *ejusdem generis*, "a general term, like 'tool,' when modified by specific terms, like 'drills, saws and other hand tools,' will be interpreted 'in light of those specific terms, absent a clear indication to the contrary' ") (quoting Alaska Construction Code § 05.090(c)(3)(A); *Bongen*, 925 P.2d at 1046).

**37.** *Cf.* AS 08.48.171 (requiring registration of architects and engineers); AS 08.64.170 (requiring registration for practice of medicine, podiatry, and osteopathy); AS 08.68.160 (requiring registration of nurses).

clude facilities management. We therefore agree with the superior court that management of the center does not involve "services of a professional nature" as that phrase was used in pre-amendment KMC 7.15.050(5). The superior court therefore did not abuse its discretion in finding that Friends had demonstrated probable success on the merits.

### 2. Friends is the prevailing party even though the city succeeded in privatizing management of the center.

■■■ The city asserts that Friends is not the prevailing party because the city accomplished exactly what it set out to accomplish and what Friends's lawsuit sought to prevent—private management of the center. It argues that because Friends did not achieve its goal, Friends is not the prevailing party.

When determining prevailing party status, we have consistently looked to whether the party successfully prosecuted or defended the action and to whether the party prevailed on the main issue.[38] Our determination of prevailing party status has therefore traditionally focused on the litigation itself.

■■■ Furthermore, the purposes of the public interest litigant exception to Civil Rule 82 suggest that the city's political success in amending KMC 7.15.050(5) and entering into a second management contract with the club is not an appropriate basis for concluding that Friends is not the prevailing party. We award prevailing public interest litigants full reasonable attorney's fees "to encourage plaintiffs to raise issues of public interest."[39] This suggests that the focus of the prevailing party determination should be on the litiga-

tion, rather than on contemporaneous political or contractual developments.

The city has not convinced us that a public interest litigant that brings a meritorious claim against a governmental unit and obtains a preliminary injunction loses its prevailing party status if, through the political process, the governmental unit later moots the lawsuit and accomplishes its challenged goals. Because Friends succeeded in obtaining the only judicial relief granted in this case before it was dismissed without objection as moot following amendment of the ordinance, the superior court did not abuse its discretion in finding that Friends was the prevailing party.[40]

### C. No Extraordinary Circumstances Justify Apportioning this Attorney's Fees Award.

■■■ Although prevailing public interest litigants are generally entitled to full reasonable attorney's fees, we held in *Dansereau v. Ulmer* that attorney's fee awards may be apportioned for prevailing public interest litigants when "exceptional circumstances" exist.[41] We have suggested that raising frivolous issues or issues included only to inflate prospective attorney's fee award may constitute exceptional circumstances.[42]

The city argues that Friends abandoned three of the claims made in its complaint by failing to respond to the city's motion for summary judgment on those claims.[43] The city claims that this "abandonment," coupled with Friends's failure to achieve its goal, establishes exceptional circumstances that

**38.** *Matanuska Elec. Ass'n, Inc. v. Rewire the Bd.*, 36 P.3d 685, 690 (Alaska 2001); *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 88 (Alaska 2001); *De Witt v. Liberty Leasing Co. of Alaska*, 499 P.2d 599, 601 (Alaska 1972); *Buza v. Columbia Lumber Co.*, 395 P.2d 511, 514 (Alaska 1964).

**39.** *Southeast Alaska Conservation Council, Inc. v. State*, 665 P.2d 544, 553 (Alaska 1983) (quoting *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977)).

**40.** *See Halloran v. State, Div. of Elections*, 115 P.3d 547, 554 (Alaska 2005) (holding that obtaining temporary restraining order may be basis for finding plaintiff to be prevailing party when the

restraining order was only relief granted in litigation).

**41.** *Dansereau v. Ulmer*, 955 P.2d 916, 918–20 (Alaska 1998).

**42.** *Id.* at 920.

**43.** As stated above, the superior court issued the preliminary injunction based on Friends's claim that the city violated its competitive bidding requirement. The remaining claims are enumerated in *supra* note 2. The city argues that "[o]ne of them was dismissed by the plaintiffs and three were essentially abandoned."

warrant apportionment of any attorney's fees awarded to Friends.

But the city moved to dismiss the underlying litigation as moot at the same time it moved for summary judgment on the claims it characterizes as abandoned. Friends very appropriately recognized that the underlying litigation was moot and joined the city's motion to dismiss the case for mootness. It was therefore not necessary to oppose the motion for summary judgment on the merits as to those three claims. Friends's decision not to oppose summary judgment as to those claims therefore cannot be characterized as an "abandonment" that might somehow demonstrate exceptional circumstances justifying apportionment of fees. And, as we stated above, Friends succeeded in obtaining judicial relief. The city cannot make this an "exceptional" case by mooting it through the political process. Because no exceptional circumstances exist, the superior court did not abuse its discretion in declining to apportion the attorney's fee award.[44]

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the superior court's judgment.

---

44. At oral argument on appeal, the city disclaimed any contention that any award of attorney's fees to Friends should be apportioned by litigation stage. It is therefore unnecessary to consider whether apportionment on that basis would be proper here. Cf. *Halloran*, 115 P.3d at 554–55 (instructing superior court on remand to consider apportionment of attorney's fee award by stage of litigation if it determined that plaintiff was prevailing party); *Hickel v. Southeast Conference*, 868 P.2d 919, 926 (Alaska 1994) (discussing propriety of apportioning attorney's fee award by litigation stage).