James A. **MARTIN** and Margaret **Martin**, Appellants,

v.

**COASTAL VILLAGES REGION FUND** and James Hanson, Appellees.

No. S–11999.

Supreme Court of Alaska.

April 27, 2007.

---

Douglas K. Mertz and William F. Cummings, Juneau, for Appellants.

Michael N. White, Friedman, Rubin & White, Bremerton, Washington, for Appellee Coastal Villages Region Fund.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

This appeal revolves around competing legal and equitable claims asserted by the Coastal Villages Region Fund (CVRF) and the Martins to a fund of money deposited with the superior court in Anchorage. The funds were originally held by Trident Seafoods, and derived from sales of halibut caught by Bruce Lewis. The Martins and CVRF asserted separate legal claims against Lewis in the superior court—the Martins filing their case in Juneau, and CVRF proceeding in Anchorage. Both parties eventually recovered default judgments against Lewis. Meanwhile, the Trident money had been deposited for safekeeping with the court in Anchorage. Relying on their Ju-

neau judgment, the Martins sought to claim the deposited funds. The court in Anchorage awarded the funds to CVRF instead, ruling that the Martins' claim was barred because it depended on Lewis's right to the funds, which Lewis had lost by defaulting to CVRF. We reverse. Because the rights both parties assert to the funds depend on equitable claims arising from Lewis's original interest in the Trident money, we conclude that the parties' dispute must be determined by the relative equities of their competing claims, not by Lewis's willingness to concede his lack of legal interest in the funds. Since the equitable claims remain unresolved, we remand for further proceedings.

## II. FACTS AND PROCEEDINGS

The Coastal Villages Region Fund is a community development quota (CDQ) non-profit corporation. Each year the United States and Alaska governments allocate to CVRF a quantity of halibut to be harvested. Fishing for halibut under the program is limited to residents of the villages CVRF represents and the villages themselves.[1]

James Hanson attempted to obtain a card permitting him to fish from CVRF's allocation of CDQ halibut, but was told that he did not qualify because he did not live in a CVRF community. He nevertheless persisted in his efforts and eventually managed to obtain a permit. Hanson then entered into a contract with Bruce Lewis, a Juneau fisher, which stated that Hanson was a qualified CDQ license holder. Under the contract, Lewis was to fish under Hanson's CVRF CDQ allocation. A certain percentage of each landing was to go to an "IFQ [Individual Fishing Quota] Broker" and a certain percentage to the "CDQ Group." Hanson was listed as the "CDQ Group Representative" and as a "Card Holder."

James Al Martin and Margaret Martin are commercial fishers living in Juneau. In March 2003 they leased their fishing vessel, the F/V MIDDLE PASS, and its equipment to Lewis. Under the lease contract Lewis was to use the boat and he would pay the Martins

twenty-five percent of gross landings during the charter period. Lewis was also responsible for the costs of operating the vessel and for returning the vessel on August 15, 2003 "in good condition and with the fuel tanks full."

Lewis proceeded to harvest significant amounts of halibut under the Hanson contract using the Martins' vessel and equipment. On August 3, 2003, Lewis delivered approximately 45,000 pounds of halibut to Trident Seafoods Corporation, a fish processor. Around August 16, 2003, Lewis delivered an additional 47,810 pounds of halibut to Trident.

During this time period, Lewis took the vessel into the Bering Sea, failed to maintain contact with the Martins, and did not send payments required under the lease. The Martins located Lewis and extended the lease until September 20, 2003. But Lewis still did not return the vessel as planned and the Martins threatened Lewis with arrest. On October 7, 2003, the Martins received a call from the owner of a dock facility at Auke Bay, north of downtown Juneau, telling them that the F/V MIDDLE PASS was located at the docks. The Martins went to the facility and found the vessel and crew, but Lewis had already left. The vessel was damaged: rotten fish in the hold had not been cleaned; equipment was broken; gear and equipment were missing; it had run out of fuel and was inoperable due to engine damage. The Martins arranged to have the vessel towed to their Juneau dock space. They cleaned and repaired the vessel at their own cost, but they missed part of the black cod season and their crabbing was limited because the vessel's poor condition made it unsafe to travel to more distant waters. According to the findings of fact and conclusions of law entered by the Juneau superior court, the only proceeds the Martins received from landings made by Lewis were $4,623 in a single payment made directly to the bank that held a lien on the boat.

Meanwhile, after learning that the halibut allocation had been issued to Hanson based

1. These villages include: Scammon Bay, Chevak, Hooper Bay, Newtok, Napakiak, Oscarville, Napaskiak, Eek, Tuntutuliak, Kongiganak, Quinha-gak, Goodnews Bay, Platinum, Kwigillingok, Kipnuk, Chefornak, Nightmute, Tununak, Toksook Bay, and Mekoryuk.

on his misrepresentation of residency within a CVRF community, CVRF sought an injunction against Trident Seafoods to have funds from the halibut landings held until the rightful owner of the money could be determined. There is no indication that Hanson, Lewis, or the Martins were notified of the motion for preliminary injunction or the lawsuit initiated by CVRF against Trident Seafoods.

On September 2, 2003, the superior court in Anchorage granted CVRF's preliminary injunction and ordered funds from Trident Seafoods to be deposited with the court until the rightful owner could be determined. Pursuant to the order, Trident sent a check to the clerk of court for $110,174.13, representing payment for the August 16, 2003 delivery of halibut by Lewis to Trident. In October 2003 CVRF dismissed Trident Seafoods as a defendant and substituted Hanson and Lewis. In its amended complaint before the Anchorage court, CVRF claimed that Hanson had fraudulently obtained access to a CVRF CDQ allocation and then entered into an agreement with Lewis to fish for the halibut. CVRF claimed that Lewis knew or should have known that Hanson was not authorized to harvest the halibut. CVRF sought a judgment against Hanson and Lewis in an amount exceeding $223,000.

In November 2003 the Martins filed a separate action against Lewis in the superior court at Juneau. They alleged that Lewis failed to pay them under the terms of the boat lease agreement, damaged the vessel, and failed to return the vessel on time. Their complaint expressly alleged their right to recover from the funds held on deposit in Anchorage.

CVRF moved to intervene in the Juneau case of the Martins against Lewis and have it dismissed so that the case could be decided in the ongoing Anchorage proceedings. The Juneau court denied CVRF's motion to intervene and dismiss. The Juneau court characterized the Martins' claim against Lewis as "a contract dispute between owners of a boat and the charter operator of the boat." The court noted:

> [This] court makes no ruling as to whether it can, should or will enter an order with

respect to funds held by the Anchorage court. Unquestionably plaintiffs are only entitled to a portion of that money if the defendant in this case is entitled to a portion of it. Probably, too, CVRF is only entitled to a portion of that money if the defendant in this case is not entitled to a portion of it. The lawsuits should determine those entitlements and the proper disposal of the funds held by the court.

On March 10, 2004, because Lewis had not appeared in CVRF's Anchorage case, the Anchorage court entered a default against him. Lewis also failed to appear in the Juneau case. In Juneau, the Martins testified and offered exhibits in support of their claim, including requests for admission that were deemed admitted after Lewis failed to make a timely response.

The Juneau court issued its findings of fact and conclusions of law on July 20, 2004. It found that Lewis violated his contract and was liable for damages to the Martins. The court set out the damages by category including lost fishing opportunities due to the late return, failure to pay for the lease, damage to the vessel, third-party charges against the vessel, and missing equipment and gear for a total judgment of $135,431.13 in favor of the Martins. Regarding the Trident Seafood funds, the Juneau court noted that proceeds from a halibut landing had been placed into an account with the Anchorage court, that "the amounts due to the Martins under the vessel charter in this case were earned by them in the contract resulting in the landings that paid the money that is now in the registry of the court in Anchorage," and that the amount owed to the Martins was "substantially overdue." But the court stated that it "makes no decision as to how the money in the registry of the court in Anchorage shall be distributed."

The Martins moved to have the funds in the Anchorage court released to them based on the Juneau judgment. The Martins argued that "[t]hey possess the sole judgment against the funds and could have executed against the funds while they were in Trident's hands or Lewis's hands, had this court not intervened." And that "[t]he funds would not even exist except for the Martins

providing their vessel for the fishing effort." The Martins cited the contract between Hanson and Lewis, in which the CDQ permit holder would be entitled to fifty percent of the landings at best. They also argued that a permit holder would only be entitled to net after the cost of the boat hire and the boat damage.

On October 11, 2004, while the Martins' motion was still pending, Lewis sent to the Anchorage court a "Demand for an Opportunity to Resolve this Matter Outside of Court." Lewis demanded that the court allow him and CVRF "the opportunity to resolve this matter in private" and that if CVRF persisted in using the court system he would file criminal charges of tax fraud against it. Lewis further demanded a trial by jury if the case remained in court.

On October 19, 2004, the Anchorage court denied the Martins' motion to release funds because "it appears that the Martins' claim to the funds on deposit in this case would be derivative of any claim of Mr. Lewis to the funds"; default had been entered against Lewis on March 10, 2004; the Martins were not parties to the CVRF v. Hanson and Lewis case; and they had not moved to intervene.

The Martins then moved to intervene in the case but stated that they "have no factual claim to pursue in the upcoming trial in this matter and do not intend to participate in that trial; they have already had a trial of their own claim and have received a judgment." The Martins argued that their existing judgment entitled them to priority because "without this court's action of ordering the funds seized, the Martins would already have been able to satisfy their judgment out of it."

The Anchorage court granted the Martins' motion to intervene. In December 2004 the Anchorage court addressed Lewis's "Demand for an Opportunity to Resolve this Matter Outside of Court," noting that default had previously been entered against Lewis and that Lewis was required to first obtain an order setting aside default before he could participate in the proceedings.

Trial was rescheduled for January 31, February 1, and February 2, 2005. On January 18 the Martins filed their complaint against CVRF in the Anchorage court, again noting their final judgment against Lewis and seeking a declaratory judgment that they have priority to satisfy their judgment out of the Trident funds. The Martins also alleged abuse of process because CVRF obtained the preliminary injunction against the Trident funds without notifying them.

On January 27 CVRF and Hanson reached a settlement in which CVRF stipulated to the dismissal of all claims against Hanson. Also on January 27 the Martins gave the Anchorage court notice that they had filed another suit in Juneau—this time against CVRF and Hanson "to contest their claim that a judgment from [the Anchorage] court entitles them to priority over the Martins, who already have a judgment that they have sought to execute against those funds," as well as claims of abuse of process.

On January 31 the Anchorage court issued a judgment in favor of CVRF. On February 2 CVRF filed a motion in the Juneau court to dismiss the Martins' claims of abuse of process, as well as a motion to dismiss for improper venue or alternatively to change venue. In Anchorage, CVRF filed a motion to consolidate the Martins' new Juneau case with the ongoing case in Anchorage.

On February 15, in Anchorage, CVRF moved for release of the funds held by the Anchorage court. Also on February 15 Lewis submitted a "notice and demand" letter to CVRF with a copy to the Anchorage court. Stating that he had been given "permission/standing" by his crew, Lewis demanded a settlement of the matter.

On February 22 CVRF gave notice in the Anchorage court of scheduled depositions of the Martins. The Martins sought a protective order before the Juneau court to prevent the "continuing campaign of harassment against the Martins by CVRF" and to find that the Martins were not required to submit to depositions. In March 2005 CVRF withdrew its request for depositions because the Martins had promised to provide the contract requested by CVRF.

In late February 2005 the Anchorage court granted CVRF's motion to consolidate the Juneau case; the Anchorage court also stated that any further proceedings would be before it.

On April 7 the Anchorage court addressed Lewis's February "notice and demand." The Anchorage court noted that "[l]etters are an inappropriate format for communication to the court" and that accordingly it would not take any action with respect to Lewis's letter.

On June 6 the Juneau court granted CVRF's motion to dismiss the Martins' abuse of process claims. That same day the Anchorage court ordered a release of the funds to CVRF after "[h]aving considered the arguments of all parties, the extensive briefing, and oral arguments." Of the total $110,174.13 held by the court, $90,174.13 was sent to CVRF, while $20,000 was sent to Hanson under a settlement with CVRF.

On September 1 the Juneau court granted CVRF's motion for summary judgment in the Juneau case, noting that the case had been consolidated into the Anchorage proceedings.

CVRF moved for enhanced attorney's fees and costs in Anchorage under Civil Rule 82(b)(3) because, it argued, the Juneau litigation was simply a frivolous attempt by the Martins to obtain "a hometown advantage" and "there could be no reasonable argument that the declaratory judgment action filed in Juneau served any purpose other than to drive up everyone's costs or to simply forum shop."

On October 19, 2005, the Anchorage court issued its final judgment in favor of CVRF. The Anchorage court also granted CVRF's motion for enhanced attorney's fees because "pursuit of the second Juneau case was unreasonable given this pending court proceeding, and resulted in unnecessary legal expenses."

The Martins appeal the Anchorage decision.

## III. DISCUSSION

The Martins make four major arguments on appeal: that the preliminary injunction in favor of CVRF was improperly granted; that the Anchorage court erred in not enforcing the Juneau judgment against CVRF; that the Anchorage court erred in giving the entirety of the seized Trident Seafood funds to CVRF; and that the Anchorage court erred in granting CVRF an enhanced fee award.

### A. The Preliminary Injunction

The Martins first argue that the court erred in "seizing funds to which the Martins had an obvious claim in an ex parte hearing without notifying the Martins so they could participate in the hearing." We review the issuance of preliminary injunctions for abuse of discretion and will find an abuse of discretion only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.[2]

CVRF initially filed its lawsuit only against Trident Seafoods and obtained an injunction against it; CVRF does not contest that no notice was given to the Martins. CVRF argues that it was only seeking to ensure the funds were not taken in order to preserve the status quo and that it had notified Trident as the holder of the funds.

A preliminary injunction requires that a defendant have an opportunity to be heard; here, there is an issue whether a "defendant" or an "adverse party" includes the Martins.[3] But while CVRF could have realized that the Martins might be an adverse party over the distribution of the funds, and though preliminary injunctions are generally harsh remedies, their purpose is not to immediately initiate a full trial on ownership. The purpose of a preliminary injunction is to maintain the status quo.[4]

---

**2.** *City of Kenai v. Friends of Recreation Ctr., Inc.,* 129 P.3d 452, 455 (Alaska 2006).

**3.** Alaska Rule of Civil Procedure 65(a)(1) states that "[n]o preliminary injunction shall be issued without notice to the adverse party." The Alaska

rule is equivalent to Federal Rule of Civil Procedure 65(a).

**4.** *United States v. Guess,* 390 F.Supp.2d 979, 984 (S.D.Cal.2005) ("A preliminary injunction is 'a device for preserving the status quo and preventing the irreparable loss of rights before judg-

There is no indication that CVRF was doing anything but preserving the funds pending a final judgment, even though CVRF might have known that there would be other potential claimants. The preliminary injunction fulfilled its purpose—to hold the funds until claims against them could be filed and determined.

And it is not obvious that the Martins were harmed by the injunction. The Martins argue that "it is not controvertible that the Martins would have received their earnings if the Anchorage court had not seized the funds just before Trident mailed the check made out to the Martins." But CVRF argues that the funds would not have automatically gone to the Martins. While a Trident Seafoods bookkeeping record states that the funds were held in an account for the Martins and checks were payable to the Martins, according to deposition testimony of an employee of Trident Seafoods this was merely "plugged" into a spreadsheet; it did not mean that the Martins would have automatically been paid. Because the Martins chose not to argue any factual issues in Anchorage, this issue was left unresolved.

For these reasons, we do not find an abuse of discretion in the trial court's issuance of a preliminary injunction.

## B. The Effect of the Juneau Judgment in Anchorage

■ The Martins' main argument is that because their Juneau judgment was obtained "first," before the Anchorage case was resolved, they had priority to the funds held by the court. The Martins argue that the Anchorage court was required to implement the Juneau judgment against the funds in Anchorage under a "full faith and credit" theory.

The Martins claim that the Juneau court found the funds held by the court in Anchorage were earned by the Martins and that "[the Juneau court] clearly expected [the An-

chorage court] to respect this finding and release those funds, even without [the court] ordering it."

But the Martins overstate the Juneau judgment. Although the Juneau court ruled that the Anchorage funds could be traced to the Martins' contract with Lewis, it expressly declined to decide on the disposition of those funds:

> The court finds that the amounts due to the Martins under the vessel charter in this case were earned by them in the contract resulting in the landings that paid the money that is now in the registry of the court in Anchorage. The amount owed is substantially overdue. *The court makes no decision as to how the money in the registry of the court in Anchorage shall be distributed.*

(Emphasis added.)

The Juneau court found that the Martins were owed money under the contract and that money from the contract was in the court registry in Anchorage. But this says nothing about the *priority* of the Martins' claim to the funds in light of other claims against them. Because of this, there was no relevant judgment to give "full faith and credit" to, and it is irrelevant that the Juneau judgment was issued first.[5] The Martins' argument that they should have priority to the funds as a matter of law based solely on the Juneau judgment is without merit.

## C. Equitable Principles

■ The Martins also argue that the trial court neglected its duty to apply equitable principles in determining rights to the funds. They note that there are five classes of potential claimants to the funds held at Trident Seafoods: the Martins as lessor; Lewis; Hanson and CVRF as "permit claimants"; the crew of the F/V MIDDLE PASS; and "judgment holders"—namely the Martins. And each class "may assert equitable claims against the money that was seized under the

ment.' ") (citing *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984)).

5. The fact that CVRF was not allowed to intervene in the Juneau case also highlights that the

Juneau case was limited as between the Martins and Lewis. The Juneau court characterized the claim of the Martins against Lewis as "a contract dispute between owners of a boat and the charter operator of the boat."

preliminary injunction." But the key issue is which potential equitable claimants actually attempted to enforce their rights. Hanson settled the case and Lewis defaulted; Lewis also claimed to be acting on behalf of the crew, but he provided no support and no crew members have sued.[6] Thus the only two relevant parties here are the Martins and CVRF.

CVRF argues that the Martins abandoned any arguments on equitable distribution before the superior court and on appeal. CVRF cites the Martins' opposition to its motion to compel discovery in which the Martins resisted CVRF's demands to produce information on "the relationship between the Martins and Bruce Lewis and correspondence between them" and exhibits from the Juneau case. The Martins' reply stated that "[their] participation in this litigation is solely to enforce an existing judgment" and that "[t]he sole question before the court is whether their judgment can be enforced against the funds." CVRF argues that by resisting discovery and limiting the claim to one solely through the Juneau judgment, the Martins abandoned any potential equity claim. In addition, CVRF argues that the Martins waived their arguments by not raising any equitable claims in the points on appeal, even if they later raised them in their appeal brief.[7]

The Martins argue that they raised equity arguments throughout the process and that their points on appeal essentially cover the equitable concern. With respect to the points on appeal, the Martins are correct in the general sense; they mention fairness and the "funds to which the appellants were entitled"—an umbrella phrase suggesting equitable issues. And though the Martins' claims were primarily based on the Juneau judgment, the Martins clearly raised equity con-

cerns below. In their memorandum in support of their motion to release funds, they argued that CVRF "would be unjustly enriched" by taking all of the fishing profits excluding the cost of providing the boat and gear. The Martins' motion to preserve funds argued an unjust enrichment claim, contending that "[w]ithout [the Martins] providing the boat and gear, there would be no funds." In opposing CVRF's motion for release of funds, the Martins again argued that it would be unjust enrichment for CVRF to take the entirety of the funds.

During the oral proceedings before the court, the Martins' counsel made several equity arguments, including that "we all know that in fact Lewis caught the fish and hired the crew that caught the fish. In other words, Lewis did, more directly than anyone else, generate the funds here," and "we know Lewis earned the money using the Martins' boat and gear. In other words, both the Martins and Lewis earned it, had ... in some sense a very real direct entitlement to it." The Martins' attorney also argued that there are multiple "lenses" through which the case could be viewed, including one of equity-based claims to the funds.

The Anchorage court agreed with CVRF that the Martins did not maintain an equity claim. At trial Superior Court Judge Sharon L. Gleason stated "I guess my sense is that the position that the Martins, as I've understood it, have taken in this litigation has been that their rights to these monies derive solely from the fact that Mr. Lewis had—that they have a judgment against Mr. Lewis, and Mr. Lewis is a party to this action." The Anchorage court ruled that the Martins' claims were derivative of Lewis's, and that because Lewis had no claim to the funds, there was no basis for the Martins to recover.

---

**6.** The Martins argue that Lewis attempted to avoid default and should have been given the benefit of the doubt. But even absent standing and waiver issues, there is nothing in the record to indicate that the court abused its discretion in refusing to take action on Lewis's two submissions. Both were filed at least seven months after default had been entered and the second was filed after judgment had been entered in the Juneau case; neither specifically sought to set aside default or the judgment; and neither as-

serted any valid defenses. In his second letter Lewis claimed to have "been given permission/standing to sue by the other crew members and/or to settle this matter on their behalf," but he provided no support for this contention and his letter was rejected as an inappropriate means of addressing the court.

**7.** Citing *Murat v. F/V Shelikof Strait*, 793 P.2d 69, 74 n. 12 (Alaska 1990).

From the transcript of the oral argument it appears that there was miscommunication between the Martins' attorney and Judge Gleason. The Martins did resist discovery and sought to have a judgment based "on the existing record alone." But the Martins' resistance to CVRF's discovery request simply reflected their reluctance to intervene formally in CVRF's legal action against Lewis. The Martins had already won a judgment on their own claim against Lewis in Juneau, and they understandably wanted to avoid a formal intervention that CVRF might use as an opportunity to collaterally challenge their Juneau judgment.

The superior court viewed the Martins' reluctance to intervene as precluding them from establishing a superior legal right to the funds claimed by CVRF. But as already mentioned above, the Martins were not merely asserting their legal right to collect their judgment from the Anchorage funds; instead, they separately asserted an equitable right to the specific funds, claiming that they had earned those funds and that CVRF would be unjustly enriched by an award of the funds. Moreover, as we have also discussed above, the Anchorage funds had been seized by an ex parte injunction, which simply had the effect of preserving the status quo to allow the ownership of the funds to be determined. Although the funds had been seized in connection with the pending Anchorage case, CVRF's seizure of the funds by ex parte injunction—rather than by execution or some other form of levy—gave it no right or priority over other potential creditors of Lewis who might seek to recover against the seized funds.

Nor did CVRF assert a direct claim against the Anchorage funds in its action. It pursued its superior court case as an action seeking damages for fraud against Lewis and Hanson, not as an action against the deposited funds. The complaint did assert an interest in the specific funds by alleging that they could be traced to the fraud allegedly committed by Hanson and Lewis; but this claim was advanced on a constructive trust theory—an equitable claim deriving from Lewis's original interest in the funds.

Thus, once CVRF established its legal claim by default against Lewis, its judgment gave it a legal right to recover from Lewis and an equitable claim against the Anchorage funds. From a procedural standpoint, CVRF's position was indistinguishable from the Martins': both parties were judgment creditors of Lewis who sought to assert competing equitable claims to the funds deposited in Anchorage. As matters currently stand, neither party has established any basis for claiming priority to those funds as a matter of law.

In dismissing the Martins' claim on the ground that their "rights to these monies derive solely from the fact that ... they had a judgment against Mr. Lewis," the superior court apparently overlooked both the assertion by the Martins of an equitable claim to the particular funds held by the court and the equitable nature of CVRF's competing claim to those funds.

CVRF insists on appeal that the Martins abandoned their equitable claim by failing to argue it before the superior court. But our review of the record discloses no unequivocal waiver of the Martins' unjust enrichment claims. The equitable claims were set out in the Martins' pleadings, and the transcript of proceedings before the superior court reveals no express or implied abandonment of the claims. CVRF did not characterize its discovery request as addressing the Martins' unjust enrichment claim, did not assert that their failure to provide the discovery precluded a ruling on that issue, or advance any other specific argument addressing the Martins' unjust enrichment theory or its own constructive trust theory for claiming the seized funds.

 In their briefs on appeal, both CVRF and the Martins attempt to argue the merits of their competing equitable claims. The Martins urge us to decide the issue without a remand. But the facts on record are insufficient for this court to make a determination. And it is the role of the trial court, and not this court, to judge the credibility of any witnesses and to weigh conflicting evidence.[8] Further proceedings are required to address

---

8. *Silvan v. Alcina,* 105 P.3d 117, 122 (Alaska 2005).

the Martins' unjust enrichment claims and to determine the extent of their equitable rights to the Anchorage funds in relation to the equitable rights claimed by CVRF.

We must therefore remand the case to the superior court for additional proceedings to resolve these issues after giving both parties an opportunity to obtain appropriate discovery to support their positions. The superior court should also on remand require the parties to give notice of the proceedings to the crew members so that any claims they have against the fund for their crew share can be adjudicated.

### D. Other Issues

Because of the remand, other arguments raised are moot, including the issue of an enhanced fee award.

## IV. CONCLUSION

For the reasons set out above, we REVERSE and REMAND to allow the trial court to determine the merits of the parties' equitable claims.